THE STATE OF KANSAS, ex rel. John S. Dawson, as Attorney-general, etc., *Plaintiff*, v. THE CITY OF WICHITA et al., *Defendants*.

No. 18,376.

SYLLABUS BY THE COURT.

1. CITIES OF FIRST CLASS—*Platted Addition—Vacation—Present Status.* Prior to 1890 a forty-acre tract of land lying wholly outside a city was platted as an addition to the city.  In 1891 the plat was vacated by the board of county commissioners. The land has ever since been used as one tract for farming purposes.  All conveyances affecting it have referred to it by its legal description.  *Held,* that since the vacation of the plat it has been unplatted lands within the meaning of section 1220 of the General Statutes of 1909, which authorizes a city by ordinance to extend its limits so as to annex adjoining territory.

2. UNPLATTED LANDS—*Power of City to Annex.* A tract of unplatted lands exceeding twenty acres not lying wholly or mainly within the limits of a city can not be added to or brought into the city by ordinance passed under the provisions of section 1220 of the General Statutes of 1909. ·

3. CITY ORDINANCE—*Changing Limits of City—When Invalid.* An ordinance changing the limits of a city which fails to declare the entire boundary of the city as changed in accordance with the requirement of section 1219 of the General Statutes of 1909 is invalid.

Original proceeding in quo warranto. Opinion filed December 7, 1912. Judgment for the plaintiff.

*John S. Dawson,* attorney-general, for the plaintiff; *H. C. Sluss, Kos Harris, V. Harris,* and *Foulke & Matson,* all of Wichita, of counsel.

*Earl Blake,* city attorney, and *John W. Blood,* assistant city attorney, for the defendants.

The opinion of the court was delivered by

PORTER, J.: Wichita is a city of the first class having a population of more than fifty thousand and is governed by a commission. The state on the relation of the attorney-general questions the right of the city to exercise authority over two certain tracts of land adjoining the city. The facts have been agreed to.

The first of the two tracts in controversy consists of 40 acres known as the Tillinghast land. Sometime prior to 1890, it was platted as Tangney's Fairmount Addition to the city of Wichita, but was never within the corporate limits of the city unless the ordinances which will be presently referred to made it a part thereof. In 1891 the board of county commissioners of Sedgwick county, upon proceedings instituted for that purpose, vacated this addition. It has ever since been used for farming purposes, as part of a farm occupied as a homestead by the widow and family of F. L. Tillinghast, deceased. No streets or alleys were ever laid out or used through the tract, nor has the city ever

exercised any authority over it before or since the vacation. The lands have been assessed for taxation in the township and all conveyances affecting it have since referred to it by its legal description. No contention is raised as to the power of the board to vacate the plat, but the city contends that it was only partly vacated for the reason that it might have been conveyed by deeds following the description of the lots and blocks as shown by the recorded plat, and that therefore it falls within the description of platted lands. We can not agree with this contention. Upon the vacation of the plat the title to the streets and alleys reverted to the owners of the abutting lots and the lands became from that time unplatted lands. By chapter 190 of the Laws of 1877 authority was given the county boards upon the petition of the owners of any unimproved town site to vacate the streets, alleys and other public reservations therein, and it was provided that upon the granting of the petition the record of such plat should be marked canceled, and that henceforth such streets, alleys and other public reservations should be vacated and that the title thereto should revert to the owners of the lots adjoining or abutting thereon. The act made provision for an appeal from the order. The authority of the board under this statute to vacate the plat of the addition in controversy seems never to have been questioned, but on the contrary the proceedings appear to have been acquiesced in by the city, and, as before observed, the validity of the vacation is not assailed. Assuming its validity, we think the 40-acre tract was unplatted lands lying outside the corporate limits of the city at the time the ordinances were passed. The power of the city to annex territory, it is conceded, is found in section 1220 of the General Statutes of 1909, which reads:

"Whenever any land adjoining or touching the limits of any city has been subdivided into blocks and lots, or whenever any unplatted piece of land lies within

(or mainly within) any city, or any tract not exceeding twenty acres is so situated that two-thirds of any line or boundary thereof lies upon or touches the boundary-line of such city, said lands, platted or unplatted, may be added to, taken into and made a part of such city by ordinance duly passed. Said ordinance shall describe the platted lands by giving the name of the addition or subdivision as platted, and by giving the metes and bounds of the unplatted lands, with the section, township, range and county in which the same are located: *Provided,* That in adding territory to any city if it shall become necessary for the purpose of making the boundary-line straight or harmonious, a portion of a piece of land may be taken into such city, so long as such portion of the piece taken in does not exceed twenty acres."

There are four classifications of land which may be annexed. First, platted lands adjoining or touching the city limits. At the time the ordinances were passed by which the city attempted to take in this tract it was unplatted lands although it had been platted formerly. It can not fall within the first classification. Second, unplatted lands, which lie within or mainly within the city. The third class can only apply to tracts not exceeding twenty acres and has no application here. The fourth, which allows for taking in tracts when it is necessary to make the boundary-line straight or harmonious has no application for two reasons. First, such was clearly not the purpose of the ordinances; and second, the proviso only permits the taking in for that purpose of tracts which do not exceed twenty acres. In addition to the claim that because this tract was platted once it remained forever after platted lands, the city makes a further contention which, if we understand the brief, is that this 40-acre tract lay wholly or mainly within the limits of the city on June 3, 1912, when ordinance No. 4491 was published which made the tract a part of the city; and to show that it did at that time lie wholly or mainly within the city limits ordinance No. 3439 is relied upon,

which was published two years earlier, on December 16, 1909, and which it is said "brought in" this 40-acre tract along with Tangney's Fairmount Addition. We quote from the brief:

"These limits having been once established, and having remained so for over two years, the city then, by Ordinance 4491 made this addition a part of the city, it lying wholly within the limits fixed by said Ordinance 3439."

As before observed, the first, third and fourth classifications of lands in section 1220 of the General Statutes of 1909 clearly do not apply to the tract in question. The second can not be made to apply, for the reason that the tract does not lie wholly or mainly within the limits of the city unless, as is claimed, the city first extended its limits by ordinance No. 3439 so as to include this tract and afterwards "brought in" the same tract by ordinance No. 4491. The difficulty with this contention is that neither ordinance is valid; both are attempts to exercise powers beyond those expressly conferred, by the statute, and there is no implied power in the city to extend its limits or to annex adjoining property.

The second of the two tracts in controversy is known as the Schweiter land, a tract containing 81 acres and a fraction. It has never been platted or subdivided into lots or blocks, it lies outside the city, and the entire tract has been used for farming purposes, except a strip one hundred and fifty feet wide which constitutes the right of way for the Wichita drainage canal. The city appropriated this in 1906 for the purpose of constructing a drainage canal and storm sewer. The owners of the tract, Henry Schweiter and wife, in December of that year by a quitclaim deed conveyed the strip to the city. The consideration for the conveyance was stated therein to be $2438.25. The deed described the strip by metes and bounds, and in the deed the portion conveyed is referred to as follows:

"Being property appropriated by the City of Wichita in the condemnation of land necessary for the construction of the Wichita Drainage Canal and Storm Water Sewer."

It is one contention that the deed conveys the absolute fee title to the right of way and that the strip which runs through the center of the tract north and south severs it into two tracts of about 38 acres each. We are not at all certain that the effect of the conveyance is involved in this case, but if it be, the question has been settled adversely to the city's claim. (*Abercrombie v. Simmons,* 71 Kan. 538, 81 Pac. 208.) While there is a conflict in the authorities, see *Pipe Line Co. v. D. L. & W. R. R. Co.,* 62 N. J. Law, 254, 41 Atl. 759, 42 L. R. A. 572, the doctrine is established here that in contracts of this particular character the interest conveyed is limited by the use for which the land is acquired. The third paragraph of the syllabus in the Abercrombie case reads:

"An instrument which is in form a general warranty deed, conveying a strip of land to a railroad company for a right of way, will not vest an absolute title in the railroad company, but the interest conveyed is limited by the use for which the land is acquired, and when that use is abandoned the property will revert to the adjoining owner."

The opinion expressly confines the decision "to cases where the contract or conveyance shows that the land was sold and received for use as a right of way for a railroad." (p. 547.) We think it applies with equal force to the case at bar where the conveyance or contract shows that a narrow strip of land was sold and received for use as a right of way for a drainage canal. The limitations of the decision in the Abercrombie case merely recognized that cases may arise where the principle would not apply, cases where by the terms of the contract the title to an entire lot or block or parcel of land was conveyed for a use which

might have been acquired by condemnation and when it was clearly not the intention that upon abandonment of the use the property should revert. The doctrine has full room for operation here, where a narrow strip is acquired for a particular use and similar in all respects to that of the right of way of a railroad.'

Several of the ordinances by which the city sought to extend its limits and take in, first the tract lying west of the canal, and then the tract lying east, were invalid for another reason. Section 1219 of the General Statutes of 1909 reads:

"The corporate limits of any city shall remain as they now are and until changed by ordinance, as herein provided. Such limits shall be declared by ordinance, and upon any change being made therein the entire boundary as changed shall be declared in one ordinance."

In ordinances Nos. 4300, 4323 and 4353 this requirement was not followed.

For the several reasons stated the proceedings by which the city attempted to bring in the two tracts in controversy were invalid and judgment is rendered for the plaintiff.