No. 28,521.

The Union Pacific Railroad Company, *Appellee*, v. Alden F. Huse, *Appellant*.

(274 Pac. 240.)

Opinion filed February 9, 1929.

*George D. Rathbun,* of Manhattan, for the appellant.

*T. M. Lillard, Bruce Hurd, O. B. Eidson,* all of Topeka, and *R. P. Evans,* of Manhattan, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: The action was one of ejectment. The land involved is a small portion of the right of way of the Blue Valley branch of the Union Pacific Railroad Company, a short distance north of the connection with the main line at Manhattan. Plaintiff prevailed, and defendant appeals.

The history of the case is told by the trial court's findings which are, in part, substantially as follows:.

That in 1872 Manhattan was a city of the third class and on November 22 of that year passed an ordinance granting to the Manhattan & Northwestern Railroad Company a right of way 66 feet wide through the city on the west side of the Blue river, according to a profile on file in the office of the city clerk. That from 1887 to 1912 the plaintiff and its predecessors owned and operated a rail-

road along the center line of the 66-foot right of way. That such track was the main line of the Blue Valley branch of the plaintiff. That for the operation of its trains, for drainage purposes and for the maintenance of its trackage a strip of land 20 feet wide on either side of the center of said track is (and was) necessary for the plaintiff's and its predecessors' use and occupancy; that the plaintiff and its predecessors did in fact have the occupancy and use of said 20-foot strip of land on either side of the center of said track at the point in controversy in this action, and were in the open, notorious, exclusive and adverse possession thereof.

That in 1912 the Purity Milling Company was the owner and holder of the fee title to the land now claimed by the defendant; that through various title owners, successors to the Purity Milling Company, the title to the real estate now claimed by the defendant finally lodged in the Liberty Milling and Ice Company.

That on November 23, 1921, the district court of Riley county appointed one Hal E. Harlan as receiver of the Liberty Milling and Ice Company. That in conformity to the orders of said court the receiver did on the 4th day of January, 1923, make, execute and deliver his receiver's deed to the real estate now claimed by defendant to one E. L. Craig, which deed was approved by said court; and that said E. L. Craig thereafter deeded to defendant all of the real estate now claimed by defendant, a part of which is in controversy in this action.

That on October 23, 1912, an agreement was made and entered into between the plaintiff and the Purity Milling Company, through whom defendant acquired title, wherein and whereby the Purity Milling Company was by the plaintiff herein given permission to occupy with its coal sheds a strip of ground 16 feet in width off of the west side of the present 66-foot right of way, in the alley located between Humboldt and Leavenworth streets, and the alley located between Leavenworth and Osage streets, in the city of Manhattan, and in consideration of this license to use the west 16 feet of the claimed 66-foot right of way the Purity Milling Company deeded to the plaintiff herein a strip of land 16 feet in width opposite the location of the coal sheds and adjoining the claimed right of way on the east; and that the defendant herein is now occupying the said 16-foot strip on the west side of plaintiff's claimed 66-foot right of way with coal sheds that were at said time built thereon.

That some time subsequent to 1912 the main-line railroad track of the plaintiff herein was moved easterly from its original location to its present location. That some time subsequent to 1912 an addition was built to the coal sheds which then existed upon the claimed right of way of the plaintiff, and extensions made thereto, to and across the tract of ground where, in 1912, the main line of track of the plaintiff was located; and this extension of the coal sheds and the tract of ground occupied by such extension, is now in controversy in this action.

That on May 25, 1921, the Liberty Milling and Ice Company, successor to the Purity Milling Company, accepted a lease from the Union Pacific Railroad Company, plaintiff herein, which lease was introduced in evidence. This lease covers the extension of the coal sheds beyond the 16-foot strip on the westerly side of plaintiff's claimed 66-foot right of way. That such lease ran for a period of five years and was in full force and effect on January 4, 1923, on which date Hal E. Harlan, as receiver of the Liberty Milling and Ice Company, executed and delivered a receiver's deed conveying the real estate now claimed by defendant to one E. L. Craig. That E. L. Craig later, and before expiration of the term of said lease above mentioned, conveyed by quitclaim deed the property covered by the receiver's deed, to the defendant herein. That the agreement above referred to and entered into between the plaintiff and the Purity Milling Company, as well as the lease above referred to, entered into on May 25, 1921, between the Liberty Milling and Ice Company and plaintiff herein, were never filed or recorded in the office of the register of deeds of Riley county, Kansas.

That while the evidence is silent upon the question of whether the commissioners appointed pursuant to the terms of ordinance No. 61 of the city of Manhattan, Riley county, and passed on November 22, 1872, for the purpose of determining and assessing the damage to property that should be condemned as a right of way and to be used in the construction and operation of said railroad, the court found that the plaintiff herein and its predecessors in title, having subsequently thereto built and operated a line of railroad through the city of Manhattan at such point, and having built their main line of track in the center of the 66-foot right of way granted by said ordinance, that the duty so imposed upon said commissioners

was performed as provided in said ordinance and as provided by law.

That while in the year 1912, or at some time immediately subsequent thereto, the plaintiff herein did move its main-line track from the center of the claimed 66-foot right of way eastward for some distance, that said act of moving the main-line track did not amount to an abandonment by the plaintiff of any claimed right of way which had theretofore been granted to said plaintiff, or which was acquired by adverse possession and usage. That as shown by the evidence, at the time of such removal and subsequent thereto, the plaintiff claimed the right to the use and occupancy of the land upon the extreme west side of said 66-foot right of way and actually entered into contracts with respect thereto with the Purity Milling Company and the Liberty Milling and Ice Company, predecessors in title to the defendant.

The court concluded that the plaintiff is the owner and entitled to the use and occupancy of the real estate in controversy and entered judgment accordingly.

The defendant contends that the court erred in admitting evidence of ownership of the right of way without having alleged it in its petition. The contention cannot be sustained. In *Abercrombie v. Simmons,* 71 Kan. 538, 81 Pac. 208, it was said in the opinion:

"A right of way, although commonly designated as an easement, is an interest in land of a special and exclusive nature, and of a high character. In speaking of its character the supreme court of the United States said:

"'A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. We discussed its character in *New Mexico v. United States Trust Co.,* 172 U. S. 171, 19 Sup. Ct. 128, 43 L. Ed. 407. We there said (p. 183) that if a railroad's right of way was an easement it was "one having the attributes of a fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal, not incorporeal, property."' (*Western Union Tel. Co. v. Penn. R. R. et al.,* 195 U. S. 540, 570, 25 Sup. Ct. 133, 141, 49 L. Ed. 312.)" See, also, *Donovan v. Pennsylvania Company,* 199 U. S. 279, 50 L. Ed. 192; *Rio Grande W. Ry. v. Stringham,* 239 U. S. 44, 60 L. Ed. 137.

So far as its use and occupancy are concerned the owner of the railroad right of way holds it for all practical purposes the same as a fee title, and since a railroad's right of way has the attributes of a fee title its owner has in some respects at least the remedies

of a fee title owner. After the issues were settled the petition contained a description of the land and a blue print showing it to be within the bounds of the plaintiff's right of way. We are of the opinion that the allegations of the petition were sufficient, and evidence of title to the right of way was properly received.

"Ordinarily it is enough fairly to inform the defendant what the suit is about, and even if inconsistencies appear they are not fatal if on any theory the plaintiff states a cause of action; and whether or not the petition is technically good becomes less material after a full trial on the merits in which the subject of the controversy has been thoroughly investigated." (*Trousdale v. Amerman,* 124 Kan. 614, syl. ¶ 2, 261 Pac. 826.)

A contention by the defendant that he had possession of the land in controversy for fourteen years cannot be sustained. The deed through which he claims appears to have been executed and delivered in October, 1923, while his answer shows the Purity Milling Company, through which he claims, recognized plaintiff's 66-foot right of way and occupied the west 16 feet thereof by permission of the plaintiff. There was evidence that the plaintiff had occupied the 66-foot right of way since 1885; that the Liberty Milling and Ice Company occupied a portion of the right of way now in dispute under a lease from the plaintiff, its right of way thereby being again recognized in May, 1921; that the Purity Milling Company had recognized the plaintiff's right to the 66-foot right of way in 1921. The land on which the defendant's coal sheds were located was acquired through these two companies. The defendant's possession of the tract in controversy after October, 1923, and refusal to vacate or to take an industrial lease thereto, appears to be the only adverse claim to the plaintiff's right of way since 1885. His title was acquired by quitclaim deed from the purchaser at a foreclosure sale of the property owned by the Liberty Milling Company. The Liberty Milling Company, as above noted, recognized plaintiff's right of possession to the tract in question, an undisputed possession existing for more than fifteen years. In *Anderson v. Burnham,* 52 Kan. 454, 34 Pac. 1056, this court held:

"Possession of land by an adverse occupant for more than fifteen years, which is actual, notorious, continuous, and exclusive, will give title thereto, although such possession is entirely destitute of color of title." (Syl. ¶ 1, See, also, *Pratt v. Ard,* 63 Kan. 182, 65 Pac. 255.)

The defendant as successor to and claimant under the Liberty

Milling Company through Craig, who was the purchaser at the receiver's sale, acquired only the interest which the milling company had in the land at the time—no more. He took the land subject to all rights and equities which could be set up against the milling company. (See R. S. 60-3465; *Culp v. Kiene,* 101 Kan. 511, 168 Pac. 1097; *Markley v. Investment Co.,* 67 Kan. 535, 73 Pac. 96.)

Various other questions argued in the briefs need no elucidation here. We are compelled to conclude that the trial court reached a proper decision.

The judgment is affirmed.