No. 32,941

The Miller-Carey Drilling Company, *Appellee* and *Cross-appellant*, v. Charles W. Shaffer et al., *Appellants*, The City of Russell, *Appellee*.

(61 P. 2d 1320)

Opinion filed November 7, 1936.

*Charles G. Yankey, Harvey C. Osborne, John G. Sears, Jr., Verne M. Laing* and *G. K. Purves, Jr.,* all of Wichita, for the appellants.

*W. E. Holmes, Mark H. Adams, Howard L. Baker, Charles E. Jones,* all of Wichita, and *Oscar Ostrum,* of Russell, for appellee and cross-appellant Miller-Carey Drilling Company.

*Glenn V. Banker,* of Russell, for the appellee.

The opinion of the court was delivered by

BURCH, C. J.: This was an action for damages for the breach of warranty of title contained in an oil and gas lease alleged to have resulted from conveyances made by the grantors of the lease to the city for strips of land acquired for the extension of the street. The trial court made findings of fact and rendered judgment in favor of the plaintiff and the city. The defendants, grantors in the lease and conveyances mentioned, have appealed. Plaintiff has cross-appealed on a point relating to the measure of damages.

The appellants, Charles W. Shaffer and Carl Anschutz, owned an 80-acre tract of land, the W½ of the SW¼ of sec. 27, T. 13 S, R. 14 W, within the corporate limits and at the southwest portion thereof of the city of Russell, a city of the third class. Across it, near the north end, is the right of way and tracks of the Union Pacific railway. Along the south line is an improved state highway known as U. S. 40. Although within the corporate limits of the city, this 80-acre tract has always been used for agricultural purposes. No part of it has ever been platted into lots and blocks. The land adjoining it on the east has been so platted, with north-and-south and east-and-west streets. The business and residence portions of the city lie to the east and northeast of this tract. One of the principal east-and-west streets of the city is Wisconsin avenue. It is the fourth or fifth street north of U. S. 40. It is 99 feet wide—the widest east-and-west street of the city. West from Main street, a north-and-south street, some distance east of the 80-acre tract above described, it is paved for several blocks, and west of that it is sanded. In 1925, and prior thereto, its western terminus was the east line of this 80-acre tract.

In 1925 there was oil development near Russell, and a small oil refinery was built on the 80-acre tract, and a street to it was thought to be needed. This could be accomplished by extending Wisconsin avenue west. Instead of condemning the land necessary for that purpose the city negotiated with the owners, Shaffer and Anschutz, and purchased from them a strip of land 99 feet wide

and 520 feet long, extending west from the terminus of Wisconsin avenue at the east line of the 80-acre tract. The minutes of the city council pertaining to the action taken read:

"The matter of extending Wisconsin street into the west half of the southwest quarter of section 27-13-14, was considered. Messrs. Shaffer and Anschutz, owners of the land, having made a proposition to sell at their purchase price of approximately $155 an acre, the question of buying sufficient land to extend that street to a point 520 feet west of the east line of the west half of the southwest quarter of section 27-13-14, said extension of said street to be 99 feet wide, was submitted and approved on the following roll call: . . ."

To effect the conveyance of the property Shaffer and Anschutz executed a deed to the city November 7, 1925. In form this was a general warranty deed. The description of the property was by metes and bounds. Following the description is this clause:

"The intent being to convey to the city of Russell the necessary land to extend Wisconsin avenue in its full width from the west line of said St. John avenue to a point eight hundred (800) feet east of the west section line of said section twenty-seven (27)."

Soon thereafter this strip of ground was opened as an extension of Wisconsin avenue and used as a street to the refinery.

Nothing further material to this action occurred until 1931, unless it is that the refinery had ceased to operate. Then the state highway commission, desiring to pave U. S. 40 south of Russell, and to have a detour while that work was being done, appears to have requested the city to extend Wisconsin avenue to the west line of the 80-acre tract, above described, to be used as a part of the detour. The action of the city on this matter is shown by the minutes of its council of May 15, 1931, which read:

"Mr. Wande, Mr. St. Aubyn, representing the state highway commission, having reported a desire of that commission to use East Seventh street and a part of Wisconsin avenue for a part of the detour during the paving work on federal highway 40 south, and of the need of a right of way across the eighty, which is the west half of the southwest quarter of section 27, it was proposed that the city buy from the owners approximately two acres of land to extend Wisconsin avenue to the west line of said section and open it as an avenue its full width in order to utilize and benefit by any road work which the state highway commission may do, and also to have an outlet to the west and southwest for those who may not conveniently use the improved highway. The price to be paid for the land was $150 per acre, which was the price at which the present owners bought the tract, and it was understood there would be no claim for damages for division of the tract by the proposed extension of this avenue. Mr. Shaffer, being one of the owners of the land, absented himself from the meeting and took no part as a representative of the city in the transaction. It was voted to buy the land needed and open the avenue as pro-

posed, agreeing to pay the landowners a total sum of $300 for the tract 800 feet east and west and 99 feet wide upon presentation of valid deed and assurance of good title. The roll call being: . . ."

On June 16, 1931, Shaffer and Anschutz executed to the city their general warranty deed for a strip of land 99 feet wide and 800 feet long from the end of Wisconsin avenue extended to the west line of the section. The description in the deed is by metes and bounds, and is followed by this clause:

"The intent being to convey to the city of Russell, Kan., the necessary land to extend Wisconsin avenue in its full width to the west line of said section twenty-seven (27)."

Soon thereafter the strip of land was opened up as an extension of Wisconsin avenue. The state highway commission graded and sanded it. It was used as a detour while U. S. 40 was being paved, and since then as a street and highway, being an additional route for travel from or into the city from the west.

On July 18, 1934, Shaffer and Anschutz, as grantors, executed to Edw. F. Murray an oil and gas lease for the 80-acre tract above described, except the railway right of way. This lease contained the usual covenants of such an instrument, among others a warranty of title. No mention was made in the lease of the tracts conveyed to the city for the extension of Wisconsin avenue. However, Murray was on the land and saw the strip of land being used as a street before the execution of the lease, and before accepting the lease he had the title to the land described therein examined by attorneys, who made no objection or requirements because of the fact that the street had been extended across the land. On July 19, 1934, Murray assigned the lease to the Miller-Carey Drilling Company, the plaintiff herein. Before taking the assignment plaintiff, through its officers, had been upon the land and the street and knew the strip of land was being used as a street and for highway purposes, and accepted the assignment without making any requirements respecting the street or the deeds Shaffer and Anschutz had executed to the city. Soon thereafter plaintiff commenced the drilling of a well on the 80-acre tract, which was completed in September, 1934, and which produced about 1,000 barrels of oil per day. At the time of the trial the leased land had been completely developed by the drilling of six wells, with a total daily potential production of 6,000 barrels of oil.

About November 1, 1934, preparatory to computing division orders for the payment of oil produced from the lease, plaintiff re-

quested Shaffer and Anschutz, under their warranty of title in the oil lease, to protect plaintiff from the title, or claim of title, of the city of Russell to the strip of land conveyed by the deeds above mentioned. They consulted the city attorney and sought the consent of the city to a reformation of the wording of the deeds, more clearly to show a limitation of use of the property for street purposes and a reversion upon cessation of such use; but nothing of that kind was done. Shortly thereafter other oil men sought to obtain from the city an oil and gas lease upon the strip of land described in the deeds and then being used for a street. One of them offered the city $3,000 bonus and the usual one-eighth royalty. The trial court found there was sufficient room on the 99-foot strip to set and operate a drilling rig without disturbing that portion used for travel. On November 22, 1934, plaintiff notified Shaffer and Anschutz in writing that unless they made some agreement with the city that day plaintiff would make a contract with the city to protect itself and would look to them for reimbursement of the expense thereof. It appears that Shaffer and Anschutz made no settlement with the city. On November 23, 1934, the city of Russell executed to plaintiff an oil and gas lease on the 99-foot strip previously conveyed to it by appellants and which was then being used as a street. This lease appears to contain all the usual covenants of an oil and gas lease. It authorized plaintiff to go upon the strip of land and explore for oil and gas, lay pipe lines, store oil, build tanks, power stations, telephone lines, and other structures thereon, to produce, save and care for and manufacture all such substances, and for housing and boarding employees. No exception appears to have been put into the lease for the use of the strip of land as a street. In consideration therefor plaintiff agreed to deliver to the city, free of cost to it, three seventy-fifths of three sixteenths of all oil and gas produced from the entire 80-acre tract, less the railway right of way.

The trial court found the primary purpose of the city in acquiring the first strip of land from appellants was for its use as a means of ingress and egress to and from the refinery, and its primary reason in acquiring the second strip was to enable the city and the highway commission to build a detour while U. S. 40 was being resurfaced; that the strip for its entire length was a public street and highway prior to the execution of the oil and gas lease by appellants to Murray; that the city had not instituted, or threatened to institute, any proceedings questioning the right of plaintiff to the strip of land

under the oil and gas lease executed by appellants to Murray and assigned to plaintiff, and that plaintiff's attorneys were not employed to defend any litigation brought, or about to be brought by the city involving plaintiff's rights to the oil and gas in the strip of land.

The above summary of facts is taken largely from the findings of fact made by the trial court, and we think contains all that are material here.

Plaintiff, in its petition filed in April, 1935, set out the pertinent facts, alleged the covenant of warranty of title contained in the oil and gas lease from Shaffer and Anschutz to Murray was broken when the lease was executed; that all of Murray's rights under the lease, including the right to maintain an action for breach of covenants of warranty therein, were assigned to plaintiff; that plaintiff sustained damages to March 31, 1935, in a sum of $886.84, stating the items thereof, and alleged it would be further damaged in an amount estimated at $6,000, which last stated claim was stricken from the petition on defendants' motion. The city of Russell was made a party defendant, and as to it the petition alleged an actual controversy existed between the city and the other parties to the action as to the rights or estate of the city in the strip of land conveyed to it by Shaffer and Anschutz, and prayed for a declaratory judgment with respect thereto. The city of Russell, by answer and cross petition, claimed to be the owner in fee simple of the strip of land, and asked to have its title quieted thereto, even though under the statute the county is designated as the owner of the fee of streets. It further alleged an actual controversy existed between it and other parties to the action as to the title or estate of the city in the strip of land, and prayed a declaratory judgment with respect thereto. Shaffer and Anschutz by their answer alleged facts deemed by them to be pertinent, and contended their deeds to the city gave it the right to use the strip of land for street purposes only; that the covenants of warranty in their lease to Murray were not broken by such deed and use, and in any event plaintiff, as assignee of Murray, could not recover damages from them.

By the judgment of the court the city of Russell was decreed to be the owner of the full legal and equitable title in fee simple of the strip of land described in the two deeds from Shaffer and Anschutz to the city, and the title thereof was quieted in the city; the deeds were adjudged to have breached the covenants of warranty in the lease from Shaffer and Anschutz to Murray; plaintiff was ad-

judged entitled to recover damages for such breach, and judgment in its favor was rendered for $486.24, the amount of damages found by the court to have been sustained by plaintiff.

The first legal question presented for our determination pertains to the interest, title or estate acquired by the city to the strip of land in question by the two deeds executed by Shaffer and Anschutz to it. It is clear from the record, and the court found, the two strips of land were acquired by the city for the extension of a city street, and that the strip of land was opened and used as a street by the city. There is no contention the city had any other use for this property at the time it acquired the deeds.

In this state a city may acquire title to real property for street purposes in any of four ways: (1) When the owner of the property makes and files a plat thereof, as provided by R. S. 12-401 *et seq.*, showing streets thereon; (2) it may open streets, using the power of eminent domain; (3) it may purchase the property needed for street purposes under the authority granted by R. S. 12-101, second paragraph, authorizing cities to purchase property needed for their use; or (4) it may acquire a street by prescription. In this state it is the settled law, also, that the fee title of land used as streets of a city is vested in the county in which such city is situated in trust for the public use. R. S. 12-406 provides that the plat made by the owner of real property, duly certified and recorded, "shall be a sufficient conveyance" so to vest the fee.

Irrespective of the manner by which the city acquired the real property for street purposes, the statute (R. S. 12-848) fixes the authority and jurisdiction of cities over streets to be that of control. It has been uniformly held that the fee vests in the county, while the authority to improve the street and use it for street purposes is vested in the city. (*A. & N. Rld. Co. v. Garside,* 10 Kan. 552, 565; *Wood v. National Water Works Co.,* 33 Kan. 590, 596, 7 Pac. 233; *Gadarl v. City of Humboldt,* 87 Kan. 41, 123 Pac. 764; *State, ex rel., v. City of Wichita,* 88 Kan. 375, 380, 128 Pac. 369; *City of Wilson v. Electric Light Co.,* 101 Kan. 425, 427, 166 Pac. 512; *Douglas County v. City of Lawrence,* 102 Kan. 656, 171 Pac. 610. *City of Emporia v. Humphrey,* 132 Kan. 682, 686, 297 Pac. 712.) We see no reason to apply a different rule in this case.

Appellees argue a different result should follow here because the deeds from appellants to the city contained no forfeiture or reverter

clause. This case does not involve a question of forfeiture or reverter, hence, the absence of those provisions in the deed has no bearing except by way of argument. Even to that extent the argument is without effect, for our statute provides how the real property of a street reverts in the event the street is vacated. (R. S. 12-506.) Cases cited by appellees on this point have to do with deeds to counties or townships. They are not in point here.

The appellee, the city of Russell, contends appellants have no standing to question the authority of the city to lease this street to the plaintiff for oil and gas, and that its authority to do so can be inquired into only by the state on the relation of the county attorney, or the attorney general, citing on that point *Regier v. Amerada Petroleum Corp.*, 139 Kan. 177, 184, 30 P. 2d 136. Without reëxamining the point there decided as applied to that case we are confident the ruling there made has no application here. In this case the city, by its cross petition, in effect is a plaintiff seeking to quiet its title in fee simple as against the appellants. The determination of its right so to do is somewhat apart from its authority to lease its streets for oil and gas purposes. More than that, the city, as well as the plaintiff, has requested a declaratory judgment with respect to that matter. Complying with this request we shall do no more than to say that counsel for appellees have cited us to no authorities, and our own research discloses none, which authorize the city to make such use of its streets.

We come now to the question whether the street as it existed when appellants executed the oil and gas lease to Murray, and when it was later assigned to plaintiff, constituted a breach of the covenant of warranty of title in the lease. In 57 A. L. R. 1431 the annotator on this subject says: "Easements such as public streets and highways, which are open, obvious, and physical encumbrances upon the property known to the vendee are not within the covenants against encumbrances," citing many cases. In *Ireton v. Thomas*, 84 Kan. 70, 72, 113 Pac. 306, the court recognized that under some authorities a public road is an encumbrance upon the land, and, if the land be conveyed without an exception as to it, it constitutes a breach of the covenant of warranty. The court said:

"This question seems never to have been decided by this court. We conceive that it would be a great surprise to the people and to the bar of the state if this court should decide that a public highway is such an encumbrance."

There it was held that a public levy on the land known to the grantee was not a breach of the covenant of warranty. In 15 C. J. 1286, it is pointed out that under some authorities a public highway over land conveyed with covenants of warranty constitutes a breach of the covenant.

". . . but according to others the purchaser is presumed to have taken it into consideration in making his purchase, and therefore the covenant is not breached by the existence of a public highway in actual use over the land at the time of the conveyance, . . ."

In *Armstrong v. Trust Co.*, 96 Kan. 722, 724, 153 Pac. 507, it was said:

"The courts have not hesitated to adopt 'the rule of reason' in construing covenants against encumbrances, and have often recognized a distinction between encumbrances which are such in a strictly literal exactness, and those which, from the nature of the contract, the situation of the parties, and their evident intent at the time it was made, appear not to have been in contemplation."

This was quoted with approval in *Wheeler v. Beem,* 111 Kan. 700, 702, 208 Pac. 626, where it was also said: "An encumbrance must operate to diminish the value of the estate," citing *Clark v. Fisher,* 54 Kan. 403, 38 Pac. 493.

Applying this doctrine to the situation disclosed by this record, we feel compelled to conclude that the street across this 80-acre tract was not such an encumbrance as breached the warranty of title contained in the oil and gas lease. It was open and used as a street, visible to anyone on the premises; Murray was there and saw the street in use before the oil and gas lease was executed, and plaintiff's officers were also present on the land and had actual knowledge of the existence of the street before the oil and gas lease was assigned to it. It was not the kind of an encumbrance that interfered in any way with the lessee, or with plaintiff, in exploring and producing oil from the 80-acre tract. If anything, it was beneficial to them, for it afforded them an appropriate means of ingress and egress both from and to the east and the west, and it had no effect upon the respective rights of the parties to the lease, or the assignment thereof, as to their share of the oil produced from the 80-acre tract. Therefore it was not an encumbrance which diminished the estate of the lessee or the assignee.

Because of the conclusions reached on the points above discussed it will not be necessary to discuss other questions argued in the briefs.

The result is that the judgment of the court below must be reversed with directions to set aside the judgment in favor of plaintiff, also to set aside the judgment in favor of the city quieting its title to the strip of land, and to enter judgment for appellants. It is so ordered.