No. 40,762

Taylor Investment Co., Inc., *Appellant,* v. Kansas City Power & Light Company, *Appellee.*

(322 P. 2d 817)

512

Opinion filed March 8, 1958.

*Charles W. Hess,* of Kansas City, Missouri, and *Edward H. Sondker,* of Topeka, argued the cause, and *John W. Breyfogle, Jr.,* of Olathe, and *Arthur N. Nystrom,* of Kansas City, Missouri, were with them on the briefs for appellant.

*Basil W. Kelsey,* of Ottawa, argued the cause, and *Keith P. Bondurant,* of Kansas City, Missouri, was with him on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by the fee title owner of real property in ejectment and for damages against a public utility for the alleged unlawful use and possession of an easement across the property to transmit electrical energy. From an adverse judgment the property owner appeals to this court.

The Taylor Investment Co., Inc., appellant, filed its petition against the Kansas City Power & Light Company, appellee, in the district court of Johnson County, Kansas, on July 8, 1955. The first cause of action was for ejectment to recover possession of the described real property and the second cause of action was for damages alleging:

"Defendant, while unlawfully in possession of the above described real property has hindered, delayed, and halted the work and progress of plaintiff in developing said real property into a subdivision for homes thereon, to plaintiff's damages in the sum of Eighty Thousand Dollars ($80,000.00)."

Issues were joined and the case was tried to the court which made findings and conclusions. Judgment was entered for the appellee, defendant below, on both the first and second causes of action and after proper preliminary proceedings appeal followed. The appellee contends that this is a fact case which was determined adversely to the appellant. It argues that a general finding made by a trial court determines every controverted question of fact in support of which evidence has been introduced, citing *Sledd v. Munsell,* 149 Kan. 110, 86 P. 2d 567. We do not, however, view this as a fact case. Based upon the stipulations of the parties made in the lower court, the documentary evidence mutually relied upon by the parties, and the findings of fact made by the trial court, the facts are as follows:

The Taylor Investment Co., Inc., (plaintiff) is a corporation organized under the laws of Kansas and the Kansas City Power & Light Company, (defendant) is a corporation organized under the laws of Missouri duly authorized to do business in Kansas.

The defendant is a public utility holding a certificate of convenience and necessity from the State Corporation Commission of

Kansas, under which it is authorized to erect and maintain poles and wires for the transmission of electric energy and communication purposes, for which purpose it and its predecessors in interest have had at all times material herein power of eminent domain and the right to acquire by condemnation a right of way and easement over and across the real estate involved in this action.

The Missouri & Kansas Interurban Railway Company by an instrument denominated "WARRANTY DEED" on the 12th day of July, 1905, (and by a subsequent quitclaim deed dated January 19, 1907) was conveyed an eighty-foot strip of ground across two tracts of land owned by the plaintiff's predecessors in title, the one tract consisting of approximately eighty acres lying immediately west of Switzer Road between 87th Street, or Kansas Highway No. 58, and 91st Street, and the other tract of approximately forty acres lying on the east side of Switzer Road between 88th Street Terrace and 91st Street, all in Johnson County, Kansas, on the following conditions, to-wit:

". . . *Said Strip of Land is conveyed for use as a right of way for a railroad to be operated by electricity or some other motive power than steam.* Said grantee, its successors and assigns shall erect and maintain a woven wire hog tight fence on both sides of said right of way; they shall build and maintain a station and furnish reasonable accommodations for passengers and freight at or near the junction of the railroad and the highway dividing Sections 35 and 36, and also a side track of sufficient length to hold three freight cars; they shall construct and maintain two passing ways for stock under the track 12 feet wide and 8 feet high, at a point to be agreed upon hereafter, they shall also construct and maintain four wagon road grade crossings with gates at points to be selected by grantor. *The above land shall revert to the grantors their heirs or assigns when abandoned for use as a right of way as aforesaid,* with all the appurtenances and all the estate, title and interest of the said parties of the first part therein, and said parties of the first part do hereby covenant and agree that at the delivery hereof they are the lawful owners of the premises above granted and seized of a good and indefeasible estate of inheritance therein, free and clear of all encumbrances, and that they will warrant and defend the same in their quiet and peaceable possession of the said party of the second part, its successors and assigns forever, against all persons lawfully claiming the same, subject to the conditions hereinbefore written." (Emphasis added.)

Pursuant to the aforesaid conveyance the Missouri & Kansas Interurban Railway Company constructed an electric interurban railway on the above described real property. Until the year 1919, the railway generated its own electricity at Overland Park, Kansas, northeast of the real estate here in question.

On the 11th day of September, 1919, the defendant's predecessor (for purposes of this action the defendant and its predecessor may be considered as one and the same), hereafter referred to as the "Transmission Company," entered into a contract with the "Railway Company" for the construction of the electric line here involved and for the supplying of electricity to the "Railway Company." The contract provided that it ". . . shall be in full force and effect for a period of thirty (30) years, ending December 31, 1949, . . ." and among other things provided:

"ARTICLE II.

"Section 1. The 'Transmission Company' agrees, during the life of this contract and under the terms and conditions hereinafter set forth, to supply and furnish to the 'Railway Company' all of the electrical energy necessary to propel the cars and trains operated by the 'Railway Company', to light and heat said cars and trains, *to light its car-barns, depots, parks and railway grounds, to operate its pumping stations and refrigerating plants, and for other railway purposes, including all lights at crossings and elsewhere required by the franchises of the 'Railway Company'* to be maintained by it.

"Section 2. The electrical energy to be furnished by the 'Transmission Company' to the 'Railway Company' under the terms of this contract shall be in the form of three (3) phase, alternating current having a frequency of sixty (60) cycles per second and a pressure of approximately thirty three thousand (33,000) volts at the point of delivery, and shall not be subject to fluctuations in voltage or frequency of sufficient extent to prevent the reasonably successful operation of the 'Railway Company's' electrical apparatus." (Emphasis added.)

The contract further required that the "Transmission Company" pay to the "Railway Company" as rental the sum of $75.00 per month and in further consideration for the "Transmission Company" performing its obligations under the contract, the "Railway Company" agreed ". . . that the 'Transmission Company' shall have the right, during the period of this contract, to erect and maintain, upon, along and over the right of way and lands owned, rented or leased by the 'Railway Company', pole lines, wires and other accessories necessary in the transmission, distribution and sale of electrical energy not only to the 'Railway Company' under the terms hereof, *but also to any other persons or parties to whom the 'Transmission Company' may desire to sell or distribute such energy. . . ."* (Emphasis added.)

The contract further provided that the location of the transmission line was not to interfere with railway operation and required that no poles, wires or other property were to be erected until the location thereof was approved by the "Railway Company." It pro-

vided: ". . . The 'Railway Company' shall have the right at any time to change the grade of its tracks or roadbed and to construct and operate additional tracks as the business of its railway may require, *and the 'Transmission Company' shall at its own cost and expense make such changes in its poles and wire or any of its appliances as may be necessary."* (Emphasis added.)

Subsequent to the foregoing contract the defendant's predecessor constructed its electric transmission line on the railway right of way from a substation at 47th and Mission Road southwest to Olathe, Kansas. This line was completed in December, 1920, and a distribution line was added in 1921. The transmission and distribution lines as thus constructed cross the land owned by the plaintiff and have been continuously maintained to the date of this action.

Electrical energy for the railroad was taken from the defendant's transmission line at two substations, Milburn substation northeast of the involved real estate and Moore Road substation southwest thereof and northeast of Olathe. Electrical energy was transmitted from Kansas City southwest and the railroad purposes were fully served by service at the two substations.

On the 21st day of October, 1919, the defendant's predecessor, the "Transmission Company," and the Olathe Electric Light and Power Company, a corporation organized under and by virtue of the laws of the State of Kansas, entered into a contract for a period of thirty years from and after December 31, 1919, conditioned upon and subject to the "Transmission Company" securing the necessary authority and permission to construct, maintain and operate, during the period of the contract, its pole lines, wires and other accessories so as to enable it to transmit and deliver electrical energy in and through the City of Olathe, Kansas. This contract provided that the electric energy to be furnished by the "Transmission Company" to the "Light and Power Company" to carry on its business of supplying electric light and power to the City of Olathe, Kansas, and the vicinity thereof, ". . . shall be in the form of three (3) phase, alternating current having a frequency of sixty (60) cycles per second and a pressure of approximately thirty-three thousand (33,000) volts at point of delivery and shall not be subject to fluctuations in voltage of frequency of sufficient extent to prevent the reasonably successful operation of the 'Light & Power Company's' electrical apparatus."

Under the foregoing contract the defendant and its predecessor supplied electric energy used in the City of Olathe from June 3,

1920, to December, 1949. Such electric energy was transmitted over the line involved in this action, and electric energy has been transmitted over this line for use in the Cities of Lenexa, Olathe, Gardner, Edgerton and Wellsville, together with rural areas, with exceptions, from 1920, to the present time.

On the 9th day of August, 1940, the railroad was abandoned and the interest of the "Railway Company" in the eighty-foot strip of land used for railway purposes reverted to the plaintiff's predecessors. Since that date the plaintiff's predecessors fenced this eighty-foot strip of land at the ends and the ground was used by them in conjuncion with the land adjacent thereto.

No instrument in writing has ever been executed giving or purporting to give an easement or grant of right of way for the location of the present transmission line in controversy to the defendant or its predecessor by either the plaintiff's predecessors in title or the "Railway Company." Neither has a right of way been condemned by the defendant or its predecessor by exercise of the power of eminent domain.

The plaintiff became the owner of the involved real estate by virtue of a warranty deed dated August 21, 1954, duly recorded, which the parties have not seen fit to set forth in the abstract.

The first contact between the plaintiff and the defendant with respect to the alleged claims of each party was by letter dated April 4, 1955, from the plaintiff to the defendant in which the plaintiff demanded that the defendant remove the transmission and distribution line across its property.

During the first few months of 1955 the defendant replaced the distribution line with larger wires and made other extensive replacements. Occupants of the plaintiff's real estate have been patrons of the defendant since 1931 and at times received their electric energy from the distribution line in question.

Upon the foregoing facts the trial court made the following conclusions of law:

"1. From 1920 to date, installation and maintenance of the transportation and distributions lines by the defendant constituted a burden upon the fee title to the ground in addition to the right of way granted to the railroad company by deed in 1907, and as such was hostile and adverse to the owners of the fee, and after the period of fifteen years ripened into an easement by prescription.

"2. The plaintiff purchased the land in question with actual knowledge of the use of the ground by the defendant company for the maintenance of its

transportation and distribution lines and is estopped from denying the defendant's prescriptive easement in such ground theretofore attained.

"3. The Court finds generally for the defendant and against the plaintiff on plaintiff's first and second causes of action and taxes the costs against plaintiff."

Are the trial court's conclusions of law Nos. 1 and 2 sustained by the facts? If not, is the judgment correct?

The issues presented for review are succinctly presented in the position taken by the respective parties.

The plaintiff's position is that ejectment is a proper remedy because the defendant or its predecessor had not secured a right of way by condemnation, by purchase from plaintiff's predecessor in title, or by an easement by prescription, the statutory period of fifteen years not having run since the date of the abandonment of the railway right of way on August 9, 1940.

The defendant's position is that there were uses made of the electric line by it which were beyond the Interurban Railway purposes and that the statutory period for easement by prescription ran from 1920 instead of August 9, 1940; that the plaintiff landowner is estopped from ejecting a public utility; and that the plaintiff purchased this real estate with the transmission line in place and that one who purchases such real estate across which there is a public utility takes it subject to the burden of the public utility.

Has the defendant or its predecessor acquired an easement by prescription? It is fundamental that a prescriptive right to an easement is substantially the same in quality and characteristics and would arise in substantially the same manner as would title to land by adverse possession. It must not only be continuous for the requisite period of time, fifteen years under the present statute of limitations, but it must be adverse and under a claim of right, and must be exclusive and uninterrupted; and all this with the knowledge and against the consent of the owner of the estate out of which the easement is claimed, reasonable opportunity for knowledge on his part being accounted to him for such knowledge. (*Insurance Co. v. Haskett*, 64 Kan. 93, 67 Pac. 446; and *Jobling v. Tuttle*, 75 Kan. 351, 89 Pac. 699.) In other words, the use of the real estate by the defendant and its predecessor for an electric transmission line across the property must have been open, notorious, adverse and hostile to the plaintiff and all of its predecessors in interest for the statutory period of time.

It is not enough that the possession be exclusive. It must be hostile, and hostility of possession cannot be presumed from mere exclusive possession, no matter how exclusive or long-continued it may been been. (*Dotson v. Railway Co.*, 81 Kan. 816, 106 Pac. 1045.)

It is also clear that a use of land under a mere license will not ripen into an easement by prescription. If the use or enjoyment was permissive merely, it is a license, which can never ripen into an easement. (*Insurance Co. v. Haskett,* supra; *Jobling v. Tuttle,* supra; and *Strauss v. Missouri Pacific Rld. Co.,* 175 Kan. 98, 259 P. 2d 145.)

The parties are not in agreement as to whether the eighty-foot strip of ground conveyed to the "Railway Company" by the "WARRANTY DEED" is an *easement* for railway right of way purposes only, or whether it is a conveyance of the *fee title* subject to the right of reverter.

This court in *Abercrombie v. Simmons,* 71 Kan. 538, 81 Pac. 208, discussed instruments which conveyed interests in real property for railway purposes. In that case there was a conveyance of a strip of land to a railroad for use as a right of way by an instrument in form a general warranty deed, but no railroad was ever built. The plaintiff had acquired the railroad's interest therein and sued the original grantor of the land in ejectment. The court there held for the defendant on the ground that the title had reverted to the original grantor, saying:

". . . Whether the right of way purchased should be designated as an easement or as a qualified or determinable fee may not be very important. A right of way, although commonly designated as an easement, is an interest in land of a special and exclusive nature, and of a high character. In speaking of its character the supreme court of the United States said:

" 'A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. We discussed its character in *New Mexico v. United States Trust Co.,* 172 U. S. 171, 19 Sup. Ct. 128, 43 L. Ed. 407. We there said (p. 183) that if a railroad's right of way was an easement it was "one having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal, not incorporeal, property." ' (*Western Union Tel. Co. v. Penn. R. R. et al.,* 195 U. S. 540, 570, 25 Sup. Ct. 133, 141, 49 L. Ed. 312.)

"Whatever its name, the interest was taken for use as a right of way, it was limited to that use, and must revert when the use is abandoned." (p. 546.)

The Abercrombie case has been cited by this court on numerous occasions without much consistency as to what was actually held.

(See, *State, ex rel., v. City of Wichita*, 88 Kan. 375, 128 Pac. 369; *Disney v. Lang*, 90 Kan. 309, 133 Pac. 572; *Railway Co. v. Labette County*, 113 Kan. 423, 215 Pac. 447; *Roxana Petroleum Corp. v. Jarvis*, 127 Kan. 365, 273 Pac. 661; *Union Pac. Rld. Co. v. Huse*, 127 Kan. 601, 274 Pac. 240 [holding that a railroad's right of way has the attributes of a fee]; *Danielson v. Woestemeyer*, 131 Kan. 796, 293 Pac. 507 [holding that a grant for a right of way created an easement]; *State Highway Comm. v. Puskarich*, 148 Kan. 388, 83 P. 2d 132 [holding that a grant for a right of way is not a fee simple absolute, but a fee simple determinable, and limited by the use for which the land is acquired]; and *Federal Farm Mortgage Corp. v. Smith*, 149 Kan. 789, 89 P. 2d 838.)

The Restatement of Law, Property, § 44, p. 121 (See, Comment m), supports the view that a grant for a specified use creates a determinable fee. On the facts and circumstances presented by this record it is sufficient to say that the conveyance of a strip of land to a railroad, as in this case, although commonly designated an easement, is an interest in land of a special and exclusive nature, and of a high character, with the attributes of a fee title. By the deed itself the "Railway Company" was required to keep the strip of ground fenced with a hog tight wire. So far as its use and occupancy were concerned the "Railway Company" held the right of way for all practical purposes the same as a fee title.

The conveyance of the eighty-foot strip of ground to the "Railway Company" was specific in that it designated that the railroad was to be operated by "electricity or some other motive power than steam." Thus, the use of an electrical transmission line was contemplated in the original conveyance. Therefore, it was proper for the "Railway Company" to use its right of way not only for its track and all other legitimate railway purposes specified in the deed or inherent in the operation of the railroad itself, but for those uses which reasonably tend to facilitate its business of transporting freight and passengers by the use of electric power. The "Railway Company" therefore had the absolute right under the deed to provide its own electric power or to contract, as it did, with the "Transmission Company" in 1919 for the construction of an electric transmission line along its right of way. (See, *W. U. Telegraph Co. v. Rich*, 19 Kan. 517.) Pursuant to the contract with the "Railway Company," the "Transmission Company" had the right to erect and maintain, over the right of way, pole lines, wires and other accessories

necessary in the transmission, distribution and sale of electrical energy. The subsequent construction of the electrical transmission line upon the right of way was under license and in complete accord with the original grant of the right of way to the "Railway Company."

On the state of facts here presented we are compelled to hold as a matter of law that the "Transmission Company" was not asserting an adverse claim hostile to the plaintiff or its predecessors in title, but used and occupied the right of way for its transmission line in complete subservience to the exclusive right of the "Railway Company" prior to the abandonment of the railroad. The "Railway Company" reserved the right to demand that the "Transmission Company" at its own expense make such changes in its poles and wire as the railway business required.

We have not overlooked *W. U. Telegraph Co. v. Rich*, supra, in which this court recognized the possibility of an additional burden on the fee title where a railroad company and a telegraph company jointly constructed a telegraph line on the railroad right of way. It was held that the portion of the business transmitted over the wires by the telegraph company, over and above the railroad uses, gave rise to a new claim for damages caused by the additional burden, if any, cast upon the easement by its use of the telegraph line. We think the case distinguishable because in the instant case the issue is whether the "Transmission Company" was asserting an adverse claim hostile to the plaintiff or its predecessors in title. We think it inconsistent to use and occupy an easement for a transmission line subservient to a railroad having the exclusive use and possession of a right of way and at the same time contend that the use of such line for non-railway purposes was adverse and hostile as to those having a reversionary interest. And this is true whether the railroad held its right of way as a fee simple determinable title or as an easement. (See, *Railway Co. v. Labette County*, supra.)

It is conceded by the parties that the eighty-foot right of way reverted to the plaintiff's predecessors in title upon abandonment of the railroad on August 9, 1940. It is likewise conceded that the "Railway Company" had no right to grant an additional easement burden for the transmission line beyond the period of use by the railroad for right of way purposes. (See, *State ex rel. Highway Comm. v. Union Elec. Co.*, 347 Mo. 690, 148 S. W. 2d 503 [closely

analogous to the case at bar]; and *Eureka R. E. & Inv. Co. v. South-
ern R. E. Co.*, 355 Mo. 1199, 200 S. W. 2d 328.)

On the facts in this case where it is clear that no easement from
the plaintiff's predecessors in title to this real estate was ever granted
directly or indirectly to the defendant or its predecessor, and there
was no privity of contract between them, the defendant was not
a licensee of the owners of the real estate after the fee title reverted
to the plaintiff's predecessors in title.

As of the date of the abandonment of the railroad right of way,
the license granted to the "Transmission Company" by the "Rail-
way Company" expired. It is conceded by the parties that this
action was filed by the plaintiff less than fifteen years after the 9th
day of August, 1940. From what has heretofore been said it
follows that the defendant has not acquired an easement by pre-
scription.

May the plaintiff maintain an action in ejectment by reason of
the defendant's unlawful use and occupancy of the premises? The
plaintiff contends that Article 12, Section 4, of the Kansas Constitu-
tion is the basis of the Kansas law for the protection of landowners.
This section provides:

"No right of way shall be appropriated to the use of any corporation, until
full compensation therefor be first made in money, or secured by a deposit of
money, to the owner, *irrespective of any benefit from any improvement proposed
by such corporation.*" (Emhasis added.)

In support of the plaintiff's argument that ejectment is a proper
remedy against public utility companies it cites *A. T. & Santa Fe
Rld. Co. v. Weaver*, 10 Kan. 344; *Cohen v. St. L., Ft. S. & W. Rld.
Co.*, 34 Kan. 158, 8 Pac. 138; and *W. & W. Rld. Co. v. Fechheimer*,
36 Kan. 45, 12 Pac. 362. The plaintiff argues that the defendant's
predecessor entered onto the premises in a lawful manner and for
a lawful purpose, but its continued use and occupancy of the right
of way became a trespass on the day the "Railway Company"
abandoned its right of way and the land reverted to the adjoining
property owners. It is argued that the only way in which the
defendant or its predecessor could legally appropriate the right of
way after the abandonment was to purchase it from the adjoining
landowners, condemn the right of way within the provisions of the
Kansas Constitution, or to have held adversely since August 9,
1940, for a period of fifteen years, none of which the defendant did.

Even assuming that the plaintiff stands in the same position as
its predecessors in title, the proposition advanced in the cases cited

by the plaintiff has been modified by this court in subsequent decisions. In *Buckwalter v. Railroad Co.*, 64 Kan. 403, 67 Pac. 831, it was held that a landowner who stood by and permitted a railroad company possessing the right of eminent domain to build and put in operation a railroad across his land, and thereby create large interests useful to the company and the public, without first having obtained the authority to do so by the exercise of the right of eminent domain or otherwise, could not maintain an action in ejectment against such company to recover the right of way occupied by it and necessary for the operation of its railroad. Specific reference is made to the well-reasoned opinion in Buckwalter in which it was said that public policy stays the hand of the courts under such circumstances.

The reason for the rule is well stated in *The Indiana, Bloomington and Western Railway Company v. Allen*, 113 Ind. 581, 15 N. E. 446, quoted extensively in the Buckwalter case, and this reason distinguishes the cases cited by the plaintiff on a factual basis. The Indiana court after making detailed reference to the public character and service with which railroads are charged, said:

".  .  . All these interests, and more, combine in demanding that a citizen, who has stood by until after the completion of a line of road has involved public interests, shall not be allowed to sever the line and destroy its efficiency by wresting possession of part of it from the company. The case does not stand upon the ordinary doctrine of estoppel. The great principle of public policy enters as an important factor and controls the judgment of the court. Nor is there any great hardship upon the landowner in yielding to its dominion. Ample remedies are open to him. He may demand and secure full compensation. He may do more, for he may invoke the aid of the strong arm of the courts, but, to do this with success, he must move before public interests are involved. If he remains inactive, better that he suffer, if some one must suffer, than the community. But he need not suffer, for compensation, if seasonably asked, will always be awarded him, although possession will be denied." (p. 584.)

In *Dotson v. Railway Co.*, supra (See cases cited therein), this court held that ejectment was not available under our decisions as a remedy for the landowner.

In *Schrag v. Blaze Fork Drainage District*, 119 Kan. 169, 237 Pac. 1047, where the plaintiff stood by and permitted the defendant drainage district to construct its ditch and put it into operation and maintain it for a period of four years, the court held the plaintiff was in no position to maintain injunction against the defendant. (See, also, annotation in 133 A. L. R. 133.)

A leading case in the United States Supreme Court is *Roberts v. Northern Pacific Railroad*, 158 U. S. 1, 15 S. Ct. 756, 39 L. Ed. 873, quoted with approval in the Buckwalter case. In the Roberts case the court said:

". . . it has been frequently held that if a land owner, knowing that a railroad company has entered upon his land and is engaged in constructing its road without having complied with the statute, requiring either payment by agreement or proceedings to condemn, remains inactive and permits them to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and be restricted to a suit for damages . . ." (p. 11.)

We think it clear that the facts of this case come within the foregoing rule. The rule should be no different where a public utility serves the public by the transmission of electricity than it is with a railroad company. The plaintiff's predecessors in title, after abandonment of the railroad on August 9, 1940, took possession of the abandoned right of way by fencing the ends at the road intersections and used the ground along with adjacent lands knowing at the time that the electrical transmission line of the defendant or its predecessor crossed the premises and served the public with electricity. The plaintiff's predecessors in title owned this land for a period of more than fourteen years, prior to making a conveyance to the plaintiff, and sat idly by acquiescing in the use of the premises and the rehabilitation of the line in 1954 by the defendant for the transmission of electricity. For the reasons stated we hold that ejectment is not a proper remedy under the facts and circumstances here presented. An action in damages for trespass would be improper for the same reasons.

Assuming that the plaintiff's second cause of action alleges facts sufficient to permit recovery for the amount to which the owners would have been entitled had the land originally been taken by condemnation, is this plaintiff entitled to maintain the action?

It is a general rule that open and notorious possession of real estate is constructive notice to all the world of the rights of the one in possession. (*Gray v. Zellmer*, 66 Kan. 514, 72 Pac. 228; *Harvester Co. v. Myers*, 86 Kan. 497, 121 Pac. 500; *Haas v. Nemeth*, 139 Kan. 252, 31 P. 2d 6; and *Federal Savings & Loan Ins. Corp. v. Urschel*, 159 Kan. 674, 157 P. 2d 805.)

The open use and enjoyment of an easement over land is constructive notice to a purchaser of the land, subject to the easement, of its existence and the rights of the owner of such easement where

an inspection of the premises would readily reveal such physical facts as to put the purchaser on inquiry. (*Federal Savings & Loan Ins. Corp. v. Urschel*, supra; 27 R. C. L., p. 729, § 493; 17A Am. Jur., Easements, § 156, p. 761; and 28 C. J. S., Easements, § 49, p. 712.)

In this case the easement of the defendant was open and visible and the plaintiff was charged with notice of the existence of the easement. The law imputes to the purchaser such knowledge as he would have acquired by the exercise of ordinary diligence.

Where there is a sale of a tract of land upon which there is an obvious existing easement or burden of any kind, the fair presumption, in the absence of any express provision in the deed conveying the property, is, that both parties act with direct reference to the apparent existing burden, and that the vendor demands, and the purchaser pays, only the value of the land subject to the burden. This presumption is independent of the question whether the party enjoying the easement has perfected his title as against the vendor or not. Nothing being said upon the subject, they deal with the property in its existing condition, and upon the assumption that it is subject to all the burdens to which it appears to be subject. (*Mo. Power & Light Co. v. Thomas*, 340 Mo. 1022, 102 S. W. 2d 564; See, *Hendrix v. Southern Railway Co.*, 130 Ala. 205, 30 So. 596; and *McFadden v. Johnson*, 72 Pa. 335.)

". . . The damages belong to the owner *at the time of the taking*, and do not pass to a grantee of the land under a deed made subsequent to that time, unless expressly conveyed therein . . ." (Wood on Railroads, Vol. 2, p. 994, and see authorities there cited.)

It was held in *Roberts v. Northern Pacific Railroad*, supra, that where a railroad company, having the power of eminent domain, entered into actual possession of land necessary for its corporate purpose, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter took the land subject to the burden of the railroad, and the right to payment from the railroad company, if it entered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belonged to the owner at the time the railroad company took possession.

Did the cause of action which the plaintiff's predecessors in title had against the defendant to recover compensation for damages by reason of the permanent taking and appropriation of the right of way by the defendant or its predecessor pass to the plaintiff

by the conveyance on August 14, 1954? The provisions of this deed have not been set forth in the abstract and we shall therefore assume that it was a normal warranty deed without specific reference to the claim for compensation. It follows that such chose in action did not pass to the plaintiff as grantee under the deed which was made subsequent to the time of the original appropriation.

It may be contended that since such chose in action does not run with the land the fifteen-year statute of limitations is not applicable. Inasmuch as the judgment must be for the defendant it is unnecessary to determine this point. We therefore leave the question open. Similar contention was made and answered by the Missouri Supreme Court in *State ex rel. Highway Comm. v. Union Elec. Co.,* supra.

The chronology of what has heretofore been said may be highly summarized as follows: The electric company defendant (or its predecessor), pursuant to a contract with an interurban railway company to supply electrical energy to the railroad which permitted it to erect and maintain an electrical transmission line on the railroad right of way from 1920, had the use and occupancy of the premises until August 9, 1940, as a mere licensee. After abandonment of the railroad on August 9, 1940, the continued use and occupancy of the premises by the electric company for a transmission line was without authority of any kind from the original grantors, or their successors, to whom the railroad right of way reverted, and fifteen years not having elapsed thereafter the electric company did not acquire an easement by prescription. By reason of inaction and acquiescence for nearly fourteen years on the part of the owners of the fee, who took possession of the right of way after abandonment with the transmission line in place across the premises, the interest of the public intervened to prevent the owners from maintaining an action in ejectment or trespass against the electric company, a public utility. This left the owners to whom the property reverted with an action in damages for the unlawful taking. The plaintiff herein, a subsequent grantee of the premises by deed dated August 21, 1954, took the land subject to the burden of the public utility and cannot maintain an action for damages which belongs to its grantors in the absence of a specific assignment of such cause of action by the grantors in the conveyance.

A judgment will not be reversed because the trial court adopted an erroneous theory of the law and based its judgment upon such

theory. (*Scattergood v. Martin,* 57 Kan. 450, 46 Pac. 935; *Saylor v. Crooker,* 97 Kan. 624, 156 Pac. 737; *La Harpe Farmers Union v. United States F. & G. Co.,* 134 Kan. 826, 8 P. 2d 354; and *Foster v. City of Augusta,* 174 Kan. 324, 256 P. 2d 121.)

The judgment of the lower court for the defendant is affirmed.

WERTZ and ROBB, JJ., concur in the result.