## Spalding v. Louisville & N. R. Co.
### Brady v. Same.
### Mills v. Same.
Jan. 19, 1940.

Polin & Polin for appellants.

W. F. Grigsby, H. M. Grigsby, P. K. McElroy, J. Miller White and H. T. Lively for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On October 9, 1937, at about noon, a train of appellee, and defendant below, the Louisville and Nashville Railroad Company, running on its track on its line of railway in Washington County, collided with an automobile at a grade crossing of a private passway or road at the point where it crossed the railroad track. The passway or road, and also the crossing, was on the farm of one John Barber, and it was maintained exclusively for his benefit in going from a public road to his residence located some distance therefrom. The automobile in which appellants were traveling over the private road or passway was owned by appellant, C. M. Spalding, and the other two appellants (Brady and Mills) occupied it with him at the time, together with some others. They had not obtained the express consent of Barber to make that specific trip over the private passway, but inasmuch as they were constructing a bridge across some stream beyond his residence (but for whom the record does not disclose), they might be considered as possessing an implied invitation to travel the passway to and from their work. However, we do not regard the fact of consent or non-consent of the owner of the private way as material.

The collision resulted in seriously damaging the

automobile in which appellants were traveling and inflicted personal injuries on each of them. They later filed their separate actions in the Washington circuit court to recover their respective damages, charging in their petitions general negligence on the part of the defendant and appellee in operating its train, whereby the collision was produced. They later amended their petitions and alleged that defendant had permitted its right of way adjacent to the private road to grow up in bushes and weeds to such an extent as to obstruct a view of the railroad track in either direction by one approaching the track from the direction traveled by plaintiffs, which, they averred, prevented them from seeing the approach of the train until they got within about 15 feet of the track. They also averred that, when they arrived at that distance from the track on the involved occasion, they stopped the automobile and endeavored by looking and listening to ascertain if a train was approaching, and, discovering none, they proceeded to cross the track and did not discover the approach of defendant's train until the front part of the automobile had gotten upon the track, when it was too late to extricate themselves from their dilemma. The answer denied the material averments of the plaintiffs' pleadings, with a plea of contributory negligence which was in turn denied, thus forming the issues.

The testimony supported in the main the averments of the petitions as amended, though some of the witnesses, all of whom were introduced by plaintiffs, testified that the condition of the right of way, produced by suffering the growth thereon complained of, was not as obstructive to either the view or hearing of the approach of the train as some of plaintiffs' witnesses stated, especially themselves. At the close of plaintiffs' testimony the court sustained defendant's motion for a directed verdict in its behalf, and entered judgments thereon dismissing plaintiffs' petitions, to reverse which they prosecute these separate appeals which have been consolidated in this Court and will be disposed of in a single opinion, since the merits applicable to the right of recovery are the same in each case and totally independent of the amount of damages each plaintiff sustained. If, therefore, plaintiffs are not entitled to recover on the merits, the question of the extent of damages sustained by each becomes irrelevant.

To sustain their appeals counsel for plaintiffs cite

us to a number of cases wherein public grade crossings were involved, and which were held to be dangerous crossings because of obstructions to the view up or down the railroad track by one traveling the public highway. Those cases hold that greater precautions are to be taken by the defendant Railway Company in actions of this nature where such obstructions exist, and furthermore hold that it is the duty of the railroad company to clear its right of way of obstructing rubbish and other growths, so as to afford the traveler of the highway an opportunity to discover the approach of trains to the crossing. There is no doubt concerning the soundness of that class of opinions; but this case is not one embraced by the principles announced in them; nor are the duties imposed by them on the railroad company applicable to strictly private crossings.

In this case there is nothing shown, or attempted to be shown, as to how the particular private passway involved herein was created or maintained, i. e., whether by contract between the railroad company and Mr. Barber, or whether by prescription, or what not. Therefore, no terms of its creation and installation may be considered in determining the rights of the parties herein. Even conceding that plaintiffs were rightfully using the passway at the time, such passways, when otherwise not qualified by contract or obligatory terms in their creation, impose no duty upon the servient estate to maintain them in a safe traveling condition. On the contrary, such duty is imposed upon the dominant estate, which is clearly pointed out in Volume 17 of American Jurisprudence, pages 1003 and 1005, in Sections 108 and 111. The first section (108) states the general doctrine of the duty of the dominant owner to make such repairs and to perform such acts as are necessary to render the use of the easement safe for the purpose for which it was created, and in describing his rights in the performance of that duty the text says: ''The dominant owner has the right of access to make repairs and may enter upon the servient estate for this purpose. He may not, however, inflict any unnecessary injury.''

Illustrations are then given showing the applicability of the text to the instant situation. The latter section (111) applies that rule to private passways and in doing so it employs this statement: ''The general rule that the owner of a servient tenement is not, in the absence of an agreement, under obligation to maintain the

means for the enjoyment of the easement in a state of repair applies in respect of easements of way. Generally, the grantor of an easement consisting of a way in the absence of any express stipulation is under no obligation to maintain the way in a condition suitable for use; maintenance of the way is left to the grantee. The latter may make the way as useable as possible for the purpose of the right owned so long as he does not increase the burden on the servient tenement or unreasonably interfere with the rights of the owner thereof * * *,,

In this case Barber, the owner of the private passway, is the dominant estate owner as to that part of the passway traversing defendant's right of way, whilst it (defendant) is the servient owner of the same part of the private passway. Therefore, according to the general rule as set forth in the text, supra, it was and is no part of the duty of such servient owner to maintain in any way the safety of the private passway for travel. Moreover, we have no doubt but that Barber, the dominant estate owner, might enter upon the servient estate to make whatever repairs were necessary for the safe use of his estate, which is, in this instance, the passway, and he may do and perform any act on the servient estate not resulting in "any unnecessary injury" thereto.

However, the precise question was before this Court in the case of Gividen's Adm'r v. Louisville & Nashville Railroad Co., 17 Ky. Law Rep. 789, 32 S. W. 612, 613. The owner of a private passway (regardless of how it was acquired), crossing the railroad track from her residence to a portion of the home premises on the other side of the track, was killed by a train colliding with her, and to recover the damages sustained by her estate, her administrator filed the action against the defendant charging as negligence on its part "The failure of the defendant to cut the bushes and other undergrowth near its road, so as that one on the track might be seen, and such injuries in this way avoided," also that such permissible growth "obstructed the view of the decedent as she approached the crossing, and, in attempting to pass over the track, she was run over and killed."

The Court held that the crossing was strictly a private one, and "therefore a signal was not necessary or required to be given of the approach of the train," which latter is thoroughly established in this jurisdic-

tion and is conceded by counsel for plaintiffs. It was furthermore held in that case that it was not the duty of the railroad company (the servient owner at that point) to keep its right of way clear of obstructing growths for the benefit of the dominant owner, and which is the precise point involved in this case. That opinion has never been overruled, and it appears to be in accord with the generally declared rule on the subject, as pointed out in the inserted text, supra, which but repeats the same declarations in all other text writers dealing with the question. It, therefore, follows that the court did not err in sustaining defendant's motion for a peremptory instruction, and in dismissing the petitions.

Wherefore, for the reasons stated, the judgments are affirmed.