No. 39,021

Felix Strauss, *Appellant*, v. Guy A. Thompson, Trustee, Missouri Pacific Railroad Company, Debtor, *Appellee*.

(259 P. 2d 145)

Opinion filed July 6, 1953.

*Ward D. Martin,* of Topeka, argued the cause, and *Harry T. Coffman,* of Lyndon, was with him on the briefs for the appellant.

*Ralph M. Hope,* of Wichita, argued the cause, and *Alex Hotchkiss,* of Lyndon, and *W. F. Lilleston,* of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: Felix Strauss instituted this action against Guy A. Thompson, Trustee of the Missouri Pacific Railroad Company,

Debtor, to recover damages for the wrongful death of his son, Andrew Felix Strauss, and for damages to personal property.

The district court overruled defendant's general demurrer to the second amended petition. From that ruling defendant has not appealed and the question whether the second amended petition states a cause of action is not presently before us. The district court, however, struck certain portions of that petition pursuant to defendant's motion. The motion was treated by the parties and the court as being tantamount to a demurrer to the particular portions stricken. It is from the latter order that plaintiff appeals. He contends the court struck out material portions of his cause of action.

For purposes of clarity in discussing the various contentions the second amended petition is appended hereto in its entirety. The portions of the first cause of action stricken were: Paragraph 7, italicized portions of paragraph 8; the italicized word "negligently" in paragraph 9; and subdivisions (a), (b), (c), (d) and (e) of paragraph 10.

Appellant states the trial court struck out substantially all averments pertaining to alleged negligence in the location, construction and maintenance of the private crossing. We think that is a fair general statement except that we do not find appellee was charged with negligently locating the crossing. The most favorable construction of the petition to appellant in this respect is the allegation in paragraph 10 (e) that the location of the latter crossing constituted an invitation to appellant to use it.

In any event the first and fundamental question presented by the instant appeal is whether appellee was required to furnish appellant a private crossing at its own expense. The answer requires an examination of the written instrument referred to in paragraph 5 of the petition whereby appellee's predecessor acquired title to the land for the right of way from previous owners of the land. What were the terms, conditions and obligations, if any, of the grantee with respect to the latter's duty to furnish appellant a private crossing? The original conveyance was executed July 16, 1886. It constituted an outright sale of the fee simple title to the strip of land in question. The title thereto was warranted by the grantors. The instrument provided the title to the land should revert to the grantors in case of abandonment or nonuse of the land for railroad purposes. No abandonment or nonuse was alleged and the petition discloses the contrary.

The stated consideration for the sale was $121.00. The instrument included additional rights and privileges to the grantee which are not now in question and need not be noted. In the conveyance the grantors reserved no easement over the railroad and no duties were imposed on the grantee to construct or maintain a private crossing over the railroad for the use and benefit of the grantors.

It is true we have a statute enacted in 1911 which reads:

"Whenever any railroad, either steam or electric, shall run through any farm so as to divide it, such railroad at the request of the owner of such farm, shall construct, keep and maintain, a crossing either on, over or under such railroad track, at some convenient place, which crossing shall be so constructed as to permit ready and free crossing thereon, by animals, farm implements and vehicles." (G. S. 1949, 66-301.)

As previously indicated appellee's predecessor in title acquired title to the strip of land in question long prior to the enactment of the above statute. It was early determined the statute is not applicable to land acquired for railroad purposes before the enactment of the statute and that under such circumstances a railroad cannot be compelled to furnish a crossing over the railroad for the private use and benefit of the landowner to connect portions of his land. (*Chamberlain v. Railway Co.*, 107 Kan. 341, 191 Pac. 261.) It also may be noted the instant petition discloses the crossing was located where it now is at the time appellant contracted to purchase the farm in 1949. We find no allegation in the instant petition that appellant or any former landowner requested appellee to change the location of the crossing and offered to bear the expense of constructing and maintaining a crossing elsewhere or to maintain this one at its present location.

It probably should be stated appellant's brief does not indicate he relies on the above statute. His counsel also frankly concede they have found no Kansas case supporting their contention that appellee was required to construct and maintain a private crossing at its own expense for appellant's use and benefit. They rely on certain railroad accident cases from other jurisdictions to which we shall refer later.

Briefly stated the substance of appellant's primary contention is that, having undertaken to construct a private crossing, it became appellee's implied duty to maintain it in a proper condition for appellant's use. In reply, appellee, in substance, asserts its construction of a crossing constituted a mere gratuity to appellant which the latter could accept or reject if unsatisfactory to him; that if the

crossing gratuitously provided were regarded as inadequate by appellant he might, with appellee's consent, construct and maintain at his own expense the same or a different crossing which would meet his requirements; that appellant was a licensee who accepted and used the crossing in the condition in which he found it and that the petition discloses he had full knowledge of its condition before the accident.

This brings us to a consideration of the legal relationship of the parties and the rights and duties incident thereto.

From what has been said it is clear appellant did not acquire an easement over the railroad by agreement. What appellant had was permissive use of a crossing, voluntarily provided by appellee. A mere privilege or permissive use, as distinguished from an adverse claim of right, does not ripen into an easement by prescription irrespective of the length of time such use continues. (*Railway Co. v. Conlon,* 62 Kan. 416, 63 Pac. 432.) See, also, *Persinger v. Mitchell,* 174 Kan. 522, 256 P. 2d 866; and a case this day decided, *Fiest v. Steere,* 175 Kan. 1, 259 P. 2d 140.

The construction of the private crossing was purely an accommodation to appellant. Appellee, being under no duty to construct a crossing, was under no duty to maintain it, absent an agreement to do so. Under these circumstances it has been held appellant was a mere, naked licensee and the license was revocable at the pleasure of the licensor. (*Railway Co. v. Conlon,* supra, p. 421.)

"A licensee is broadly defined as a person who enters upon the property of another for his own convenience, pleasure, or benefit. In order to constitute the person so entering a licensee, his entrance upon the property of another must be pursuant to the license or implied permission of the owner. Such permission is frequently conferred by law in specific cases, as well as by acts of the owner of the property or of the person in charge of it." (38 Am. Jur., Negligence, § 104.)

In 44 Am. Jur., Railroads, § 425, a licensee is defined thus:

"A licensee is a person who for his own convenience, pleasure, or benefit, enters upon the property of another pursuant to the license or implied permission of the owner."

Restatement, Torts, § 330, defines a licensee as follows:

"A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission.
"Comment:
"a. 'Invitation' and 'permission.' An invitation differs from a permission only in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter; a permission is conduct justifying others in

believing that the possessor is willing that they shall enter if they desire to do so. It is immaterial whether the consent which creates the license is an invitation originating with the possessor of the land or by a permission given upon request made by the licensee. The important fact is that the entry is by the consent of the possessor and it is immaterial that the suggestion of the visit originates with him or with his licensee."

In 65 C. J. S., Negligence, § 35 d, is found the following statement:

"A mere licensee takes the property or premises on which he enters as he finds them, enjoys the license subject to its concomitant perils, and, although he does not necessarily assume all risk of injury by going on another's premises, he does assume all the ordinary risks or dangers *incident to the condition of the premises or property*, and the manner of the conduct of the owner's business thereon, *particularly risks which are obvious and patent*." (p. 495.) (Italics supplied.)

Appellant argues he had an implied easement and leans heavily on the early case of *Railway Co. v. Conlon*, 9 Kan. App. 116, 57 Pac. 1063 (1899). That case did not involve the specific question here presented, namely, whether the railroad was under a legal duty to construct and maintain a private crossing for the landowner. That question, as heretofore indicated, was determined against appellant's contention in *Chamberlain v. Railway Co.*, supra (1920). In *Railway Co. v. Conlon*, 62 Kan. 416, 63 Pac. 432 (1901), previously cited herein, it appears the same crossing as in the first case of *Railway Co. v. Conlon*, supra (1899) was involved. In the later Conlon case and upon facts showing a fee simple title in the railway company to the 100-foot strip of land, not disclosed in the first Conlon case, this court held:

"A grantor in a deed excepted from the land conveyed a hundred-foot strip through the same theretofore taken by a railway company under condemnation proceedings, by virtue of which the railway corporation obtained title in fee. *Held*, that the grantee was not entitled to a way of necessity from one part of her land to another divided by the strip so condemned.

"A railway company constructed a crossing over its track and ties and put gates in its fences for the benefit of the owner of land so situated, by whom the same were used in passing from one part of her farm to the other for more than fifteen years. During that time the railway company maintained said crossing and gates. *Held*, that the landowner was a mere licensee, and could not, by use of the crossing for the time stated, obtain a prescriptive right to the same." (Syl. ¶ 1, 2.)

Appellant stresses statements in the opinion of the first Conlon case relative to the care required by the railroad company to avoid injury to cattle which were negotiating the crossing. We desire to emphasize that we are not presently concerned with the question

of the degree of care the railroad company was required to exercise in the operation of its train. Those allegations of the petition were not stricken and are not now involved. They pertain to alleged active negligence in the operation of the train. Nor are we now interested in appellee's contention relative to what it states constituted the proximate or legal and efficient cause of the damage sustained. The single question with which we are presently concerned is whether appellee is liable in damages for failure to furnish appellant a private crossing adequate for his needs at its own expense. That question has already received a negative answer herein.

The opinion might well end here. However, in view of appellant's argument that he has an implied easement we shall briefly pursue his contention. The argument, if sound, could not aid appellant in this case. Absent an agreement to the contrary the duty to maintain an easement rests on the person claiming it. (*Spalding v. Louisville & N. R. Co.*, 281 Ky. 357, 136 S. W. 2d 1.) See thorough discussion of subject, with citation of authorities, in 17 Am. Jur., Easements, §§ 108 and 111.

We have not overlooked decisions from other jurisdictions furnished by the industry of appellant's counsel. They, and additional authorities, have been examined with care. We need not analyze them separately. Some of them deal with distinctly public crossings and some with crossings of a public nature. In one of them the railroad constructed a crossing over its railroad tracks between city streets and it deliberately invited the public to use such crossing. In some of the cases cited the courts expressly distinguished the cases involving public crossings from those pertaining to private crossings connecting portions of a farmer's land. Cases cited by appellant which appear applicable are not in harmony with our own decisions on the question of the railroad's duty to furnish a private crossing at its own expense.

There was no demurrer to the second amended petition after the court struck the portions thereof here involved. Appellee filed its answer. The case stands for trial on the issues thus joined. What has been said herein does not pertain to the active negligence charged in the operation of the train. That question is not before us and obviously we express no views thereon.

The order of the district court striking the designated portions of the second amended petition is affirmed.

## "SECOND AMENDED PETITION

"Comes now said plaintiff and, for his causes of action against said defendant, alleges:

### "First Cause of Action

"1. The plaintiff is a resident of Osage County, Kansas, and his post office address is Quenemo, Kansas.

"2. The defendant is a resident of St. Louis, Missouri, and his post office address is Missouri Pacific Building, St. Louis 3, Missouri. By appointment of the United States District Court for the Eastern District of Missouri, in proceedings for the reorganization of a railroad under acts of Congress relating to bankruptcy, as amended, said defendant is now and was on the 15th day of November, 1949, and for many years prior thereto, the duly qualified and acting trustee of the railroad and property of said Missouri Pacific Railroad Company, and as such the owner and in sole charge of all of the property, claims, credits, moneys and effects of said railroad company, and as such trustee, is authorized to be sued in this action.

"3. The plaintiff has been since about October —, 1949, under his contract to purchase said land, the owner of an interest in, and in possession of, a farm [Description of quarter section of land] and has lived on that farm since about October —, 1949.

"4. The plaintiff was the father of Andrew Felix Strauss, who died the 15th day of November, 1949, as hereinafter alleged, intestate, a single man of age 28 years, without natural or adopted children, leaving surviving him this plaintiff, his sole heir at law, next of kin and dependent. Andrew Felix Strauss resided with the plaintiff and had always resided with the plaintiff, except during his World War II military service; and, during his entire adult life, he helped the plaintiff in his business and farming operations and gave him filial care, love and companionship, comfort, attention and protection, according to his ability and opportunity. No administration was had on the estate of said decedent, and no personal representative was appointed.

"5. On or about the 16th day of July, 1886, David Eubanks, a former owner of said land, made, executed and delivered to the defendant's predecessors in interest, the Council Grove, Osage City & Ottawa Railway Company, the railroad right-of-way easement grant recorded in Volume 61 at page 187 in the office of the Register of Deeds of Osage County, Kansas, by reference made a part hereof, and the defendant and his predecessors thereby acquired a right-of-way easement for railroad purposes only, subject to the right of the owners, tenants and occupants of said land, including the plaintiff and his said son, to cross said right-of-way at the private crossing or crossings constructed and maintained by the railroad company and the defendant.

"6. The defendant on the 15th day of November, 1949, and prior thereto, operated a railroad on said right-of-way over and across said farm of the plaintiff, bisecting the farm so that the house and farmyard and most of the land lay north of the railroad and approximately 20 acres of the farm lay south of the railroad and accessible only by a private crossing constructed and maintained by the defendant and his predecessors in interest over and across said railroad for the use of the owners, tenants and occupants of said farm, including

this plaintiff and his deceased son, Andrew Felix Strauss, in carrying on farming operations and other ordinary uses of said land. Said crossing for a time supplemented, and has been in later years, and was in November, 1949, maintained by the defendant in lieu of, another and prior crossing for like purposes constructed and maintained by the owners and operators of said railroad approximately 325 feet east of the crossing in use on the 15th day of November, 1949. The plaintiff, after diligent inquiry, is unable to ascertain and does not know when said old crossing was constructed but he is informed and believes, and therefore alleges, it was constructed at or about the time the railroad was originally constructed; and he is further informed and believes, and therefore alleges, that said crossing in use on the 15th day of November, 1949, was constructed at some later date prior to the year 1901.

"7. A few years prior to the 15th day of November, 1949, the exact time being unknown to plaintiff after diligent inquiry, the defendant raised the grade of the railroad track without proportionately raising the grade of the south approach of said south west crossing; leaving the north end of the south approach of said crossing dangerously and abruptly steep and covered with loose ballast type material to a depth varying to approximately 18 inches for a distance varying to about 8 feet southward from the ends of the railroad ties, which condition and defects were latent and were not apparent to the plaintiff and his son from ordinary observation, and the defendant and said railroad company in constructing and maintaining said crossing negligently established said grade and used materials which were too loose and unstable to afford adequate traction to light weight tractors pulling ordinary loads northward across the crossing, which condition was known to the defendant, or should have been known to him, and the defendant knew, or should have known, that such tractors would be used there for that purpose.

"8. The defendant and his predecessors in interest knew that the railroad right-of-way bisected the farm of plaintiff and his predecessors in title and that a private crossing was necessary and required in order that the landowners might have access to the land south of the right-of-way; that defendant and his predecessors in interest undertook to, and did, furnish, construct and maintain a private crossing for said landowners; that defendant and his predecessors in interest did change and relocate the private crossing and did close the original crossing and did locate, construct and maintain another private crossing to the west thereof, being the crossing in use in November, 1949; that by reason of the premises and the acquisition of the right-of-way easement and the use thereof by defendant, the defendant was under a duty by operation of law to use due care *in the location, construction and maintenance of said private crossing and* in the operation of its trains over and across the same; *that by reason of the premises an implied agreement existed which required the defendant to exercise due care in the location, construction and maintenance of the private crossing and in the operation of trains over and across said private crossing;* that by reason of the premises *the conduct of the defendant amounted to an invitation and request that plaintiff and his predecessors use the private crossing provided by defendant and that* defendant was thereby required *to locate, construct and maintain said private crossing in a safe and passable condition and* to exercise due care for the safety of plaintiff and his son, Andrew Felix Strauss, in the use of said crossing.

"9. On the afternoon of the 15th day of November, 1949, the plaintiff and his son, the said Andrew Felix Strauss, harvested corn from said land south of the railroad, using for that purpose a 2-wheel trailer pulled by a 1942 '81' Massey-Harris tractor. After filling the trailer with an ordinary load of ear corn the plaintiff and the said Andrew Felix Strauss were returning via said crossing to that part of the farm north of the railroad and, having first looked and listened to ascertain that no trains were approaching, attempted to cross the railroad over said west crossing above described, the rear driving wheels of the tractor did not have solid traction upon the defendant's south approach to said crossing, which lack of efficient traction and steepness of grade prevented the tractor from pulling the load across the crossing, the wheels turning ineffectively in the loose ballast type material *negligently* placed and left there by the defendant. Thereupon, for the purpose of taking said tractor off the defendant's railroad track and removing it from danger of the defendant's railroad operations, and for the purpose of taking said tractor and its load to the plaintiff's farm buildings for storage, the plaintiff and his son brought to the crossing a 1937 'D' John Deere tractor, also owned by the plaintiff, and, having first looked and listened to ascertain that no trains were approaching, proceeded to hitch it to the front of the Massey-Harris tractor by means of a chain, preparing to pull the Massey-Harris tractor and its load over the crossing. At that moment one of the defendant's trains, being late and off schedule, eastbound upon the defendant's railroad tracks, suddenly, without timely warning and at an excessive and dangerous rate of speed, to-wit; a speed of approximately 60 miles per hour, which was excessive and negligent in view of the existing conditions above alleged and the bluff around which said train was proceeding, and not under proper control, was driven and operated by the defendant into, upon and over the plaintiff's son and into, upon and over the plaintiff's tractors, fatally injuring the said Andrew Felix Strauss, and on the same day he died as a result of said injuries.

"10. The conduct of the defendant, acting by and through his agents and employees, was negligent in the following respects:

"(a) in raising the railroad track grade at the crossing without raising the grade of the south approach of the crossing, leaving the north end of said south approach grade dangerously steep, and too steep for safe use by light weight tractors;

"(b) in placing an excessive and dangerous amount of loose ballast type material at the north end of the south approach to said crossing, in such manner, and to such depth, light weight tractors could not safely or efficiently pull an ordinary load northward over said crossing;

"(c) in failing to construct and maintain said crossing so that the approach from the south was level with the rails;

"(d) in keeping said crossing in the condition above described knowing, or having reason to know, that the crossing was used, or might reasonably be expected to be used, in the manner above described;

"(e) in expressly or impliedly inviting the plaintiff and his said son to use said new, west crossing at a point where the visibility of approaching eastbound trains was restricted by said curve and bluff to the west of said crossing;

"(f) in operating said train in the manner above described, and around the face of the bluff which obstructed view of the train from said crossing, without giving any warning of approaching the crossing and without keeping proper lookout for persons using said crossing;

"(g) in operating said train at an excessive and dangerous speed, to-wit: a speed of approximately 60 miles per hour, which was excessive and negligent in view of the existing conditions above alleged, and in not having said train under control; and

"(h) in failing to stop and control the speed of said train after seeing, or being able to see, the tractors and Andrew Felix Strauss in a helpless position of peril approximately 525 feet ahead of the train, as above alleged;

and said negligent conduct and omissions of the defendant proximately caused said collision and the resulting injury and death of Andrew Felix Strauss, thereby causing the plaintiff great mental anguish, suffering and bereavement, and depriving the plaintiff of his said son, and causing to the plaintiff loss of the filial care and attention of said son, and thereby damaging the plaintiff in an amount exceeding $15,000.00.

### "Second Cause of Action

"1. For his second cause of action the plaintiff by reference alleges all of the pertinent facts above alleged, as if set forth here at length.

"2. The plaintiff further alleges that the front portion and the left side of said Massey-Harris tractor were damaged in amount approximately $60.00; and said John Deere tractor was smashed and broken generally and beyond repair and thereby damaged in the sum of $1000.00; thereby damaging the plaintiff's property in the sum of $1060.00, all of which resulted proximately from the above alleged negligent acts and omissions of the defendant and his employees.

"[The prayer was for $15,000.00 on the first cause of action and for $1,060.00 on the second cause of action.]."