NOT DESIGNATED FOR PUBLICATION

No. 127,335

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOLENE DIRKS, CURT DIRKS,
LANDON DIRKS and HEIDI DIRKS,
*Appellees/Cross-Appellants*,

v.

TERRY FURCHES,
*Appellant/Cross-Appellee,*

SIAN PICKARD and KENNETH SCHMIDT,
*Defendants,*
and
BOARD OF COMMISSIONERS OF LOGAN COUNTY,
and WINONA TOWNSHIP, LOGAN COUNTY,
*Appellees/Cross-Appellees*.


MEMORANDUM OPINION

Appeal from Logan District Court; KEVIN BERENS, judge. Oral argument held March 12, 2025. Opinion filed July 18, 2025. Affirmed.

*Charles A. Peckham*, of Brown, Creighton & Peckham, of Atwood, for appellant/cross-appellee.

*Todd R. Stramel*, of Stramel Law Firm, P.A., of Colby, for appellees/cross-appellants.


Before HURST, P.J., HILL and ARNOLD-BURGER, JJ.


PER CURIAM: To fully enjoy the ownership of your land, you must have access to it. If you can't get to your land, what good is it? This simple truth led to the development of the common law prescriptive easement. Such an easement is "prescriptive" in the sense that it expresses—through a court order—"what must or should be done." Black's Law

1

Dictionary 1432 (11th ed. 2019). And the "prescriptive easement" is "[b]ased on or determined by ancient custom or long-standing use; having existed for so long as to have become a matter of right." Black's Law Dictionary 1432.

When a court is resolving disagreements between neighboring landowners on claims about a prescriptive easement, knowledge of how a tract of land has been used is just as important as the courthouse records about that land. Custom and usage creates this type of easement—not recorded deeds.

Page City is a tiny unincorporated townsite in Logan County in northwest Kansas. When hopes were high that people would come and settle, the townsite was platted in 1822. Over time the railroad came, followed by a grain elevator, and then a federal highway.

In 1937, one tract of Park City, Parcel 1, located just north of and parallel to the railroad right of way, was divided into Parcels 9 and 1. The land was divided in a sheriff's deed after a bank foreclosure. The order separated the western portion, Parcel 9—which contained a house with its front door facing east—from the eastern portion, Parcel 1. The new property line was drawn about 30 feet from the front yard of the house, thus creating an issue for accessing Parcel 9. Bordering Parcel 9 to the north and west is farmland, to the east is Parcel 1, and to the south is a right-of-way owned by the Union Pacific Railway.

Parcel 9 is landlocked. Parcel 1 on the east side of the division is not landlocked. Since the time of that division, access to Parcel 9 has been made through a loop road on Parcel 1 just north of the railroad right-of-way.

This appeal and cross-appeal concerns that easement. Terry Furches appeals the trial court's finding that a prescriptive easement exists that allows his neighbors, the

2

Dirkses, access through his property's private drive. Furches advances three arguments. First, Furches argues that the trial court's findings lacked support with substantial competent evidence. Second, Furches argues that any easement was terminated through abandonment or adverse possession. Finally, Furches argues that the trial court's designation of the shape and size of the easement was unreasonable.

Our review of the record reveals that substantial competent evidence supported the trial court's finding of a prescriptive easement, and there was no evidence of abandonment or adverse possession to extinguish the rights to that easement. And because an easement need not be as narrow as reasonably possible, the trial court's determination on the shape and size of the easement was reasonable.

*While the land is eternal, its owners are not.*

Since the division of the two parcels in 1937, every owner of Parcel 9 consistently accessed the property by using the loop road on Parcel 1. At one point, a grain co-op owned the property and rented the house and garage to Linda Ayers, who testified that she believed the co-op owned the vacant property to the east of Parcel 9—covering most of Parcel 1. While she rented the property, Ayers maintained the land by mowing the grass on Parcel 1 and used the loop for access from the main road, known as Front PC, to the house and garage on Parcel 9.

The co-op sold Parcel 9 to Ronda Morris, who owned the land until she died in 2021. During Morris' ownership, she maintained the land on Parcel 1 by mowing and treating the grass as well as taking care of the weeds and filling potholes. She regularly used the loop road on Parcel 1 that allowed access to Front PC. The loop road was also regularly used by guests and public vehicles, such as utility vehicles, emergency vehicles, and the school bus which picked up Morris' children. When Morris died in 2021, her

estate sold the property to Jolene Dirks and her son, Landon, as joint tenants with rights of survivorship.

*Over the years, ownership of Parcel 1 has changed.*

Christine Furches assumed title of Parcel 1 in 1994, and the property remained vacant until her son, Terry Furches, used the property for an auto salvage yard. Terry testified that his mother owned the property in name only because she loaned him the money to buy the property, and therefore he assumed control of Parcel 1 and continued to control the property until present day. Title passed to a friend of Terry's that stored cars on the salvage yard to help "out Terry with a problem that he had by taking over all of his property at the time." Title passed back to Christine Furches, who executed a transfer on death deed in 2018 naming Terry as beneficiary, and subsequently executed a quit claim deed to him in 2021.

Terry testified that when he assumed control of Parcel 1, he made a verbal arrangement with Ronda Morris—that lasted until she died—for her to use the loop road to access her property if she continued mowing the grass on Parcel 1. Terry also testified that the arrangement was made based on a recommendation by the previous owner of Parcel 1 and his attorney. A few months after Morris died, Furches extended the fence surrounding his salvage yard, which cut off access to the east part of the loop road.

After Jolene and Landon Dirks purchased Parcel 9, Terry testified that he offered them the same arrangement he had made with Morris. Terry claimed that Jolene demanded that he "tear the fence down and move it back to where it was, and she has continually blocked it." After this initial interaction, Terry testified that Jolene began to block access to the new gate to his salvage yard. Jolene testified that Terry's extension of his fence cut off her access to the east side of the loop road, which impaired access to her property.

*The Dirkses seek declaratory relief proclaiming a prescriptive easement.*

The Dirkses claimed a right to the use of the loop road based on several theories: (1) adverse possession; (2) implied grant; (3) implied easement; and (4) prescriptive easement. Initially, Terry was the sole defendant, but after amendments to their complaint, the Dirkses joined two individuals with cars stored on Terry's salvage yard; the Board of Commissioners of Logan County, Kansas; Winona Township; and Union Pacific Railroad Company. The Dirkses also asserted additional theories of title: public roadway by prescription; public roadway through K.S.A. 68-117; implied easement by reservation or grant; and implied easement by necessity.

*The trial court quickly disposes of the Dirkses' alternative claims.*

The trial court found that the Dirkses failed to meet their burden on the alternative claims to an easement by prescription.

First, the court found that the evidence did not establish a public roadway because there was not an adequate showing of public use by others than the owners of Parcels 1 and 9. Then the court denied the Dirkses' K.S.A. 68-117 claim because the statute does not confer jurisdiction on the trial court. Next, the trial court found that the evidence did not support an implied easement by reservation or grant, finding that intent was not established. The trial court found the evidence did not support an implied easement by necessity because the conveyance of property was done through a sheriff's deed, which is an involuntary sale. The trial court determined that a voluntary sale is required for the creation of an implied easement by necessity. The court, however, did note that the evidence supported a finding of necessity. And finally, on the adverse possession claims, the trial court found that the evidence did not establish adverse use because there was not a belief of ownership nor was the use knowingly adverse to the landowner.

5

*The trial court found a prescriptive easement on Parcel 1.*

The trial court found that sufficient clear and convincing evidence supported a prescriptive easement. The court found that the use of the loop road went back as far as the 1970s and the use was adverse to Parcel 1's owners; the use was open and exclusive "in a manner unique to the people that lived in [the Parcel] 9 house;" and continued for at least 15 years. As a result, the court determined a prescriptive easement was established for "ingress and egress to [Parcel] 9." In a journal entry restating its ruling, the trial court specified the area of the prescriptive easement:

    a.   "Beginning at the Northeast Corner of Tract 9 (Plaintiffs property) continuing east along the property line 74.5 feet (43.4 feet plus 31.1 feet as indicated on Exhibit A), to the green dashed line on Exhibit A.

    b.   Then, south (following the green dashed line on Exhibit A) to the Southwest corner of the previously existing wrecking yard fence.

    c.   Then, southeasterly 65.5 feet (along the blue line on Exhibit A), to the right-of-way.

    d.   Then, west along the right-of-way/property line to the Southeast Corner of Tract 9.

    e.   This prescriptive easement is illustrated in yellow highlighting on the attached Exhibit A."

*Both sides appeal.*

Furches timely appealed the trial court's finding of a prescriptive easement. The Dirkses timely filed a cross-appeal from the trial court's denial of their alternative claims. Furches argues that the trial court erred in its findings that a prescriptive easement existed. He contends that the elements to prove a prescriptive easement were not met, claiming the elements of adverse and exclusive use were unsupported by the evidence.

6

*Our standard of review is well-established.*

Whether a prescriptive easement exists is a question of fact and must be shown by clear and convincing evidence. See *Hale v. Ziegler*, 180 Kan. 249, 256, 303 P.2d 190 (1956); *Fiest v. Steere*, 175 Kan. 1, 6, 259 P.2d 140 (1953); 28A C.J.S., Easements § 23. Clear and convincing evidence is evidence that is enough to establish that the truth of the facts asserted is highly probable. *In re Adoption of C.L.*, 308 Kan. 1268, 1278, 427 P.3d 951 (2018). Clear and convincing evidence is an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt. 308 Kan. at 1278.

Generally, appellate courts review a trial court's findings of fact for substantial competent evidence and exercise unlimited review over the legal conclusions based on those factual findings. *Rivera v. Schwab*, 315 Kan. 877, 914, 512 P.3d 168 (2022). When an appellate court reviews determinations required to be based on clear and convincing evidence, the court considers whether—after reviewing all the evidence viewed in the light most favorable to the prevailing party—the trial court's fact-findings are deemed highly probable. In reviewing those findings, an appellate court should not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of C.L.*, 308 Kan. at 1278-79.

*The existence of a prescriptive easement turns on the nature of the prescriptor's use.*

A prescriptive easement generally refers to the nonexclusive right to use another's property acquired by the manner of the prescriptor's use. *Allingham v. Nelson*, 6 Kan. App. 2d 294, 298, 627 P.2d 1179 (1981). Prescriptive easements arise when the use is (1) open; (2) exclusive—meaning unique to the prescriptor; (3) continuous; (4) lasting at least 15 years; and (5) adverse. *Pyle v. Gall*, 317 Kan. 499, 503, 531 P.3d 1189 (2023); K.S.A. 60-503. The requirement of exclusivity is "met if the landowner's actions fail to

substantially interrupt the prescriptor's use of the land for the prescriptor's specific purpose during the prescriptive period." *Pyle*, 317 Kan. at Syl. ¶ 2.

Courts interpret prescriptive easements narrowly given that they are created through the adverse use of another's property. *Stroda v. Joice Holdings*, 288 Kan. 718, 721, 207 P.3d 223 (2009).

*Substantial competent evidence supports a prescriptive easement finding.*

Furches advances several arguments claiming that the trial court's findings lacked substantial competent evidence to support the finding that a prescriptive easement existed. First, he argues that testimony and evidence at trial failed to show Furches or his predecessors in interest gave prior permission for the owners of Parcel 9 to use the loop road to access their land. And even if permission was granted prior to Furches' ownership of Parcel 1, he argues that permission defeats any claim of a prescriptive easement.

Furches is correct that "[a] mere privilege or permissive use, as distinguish[ed] from an adverse claim of right, does not ripen into an easement by prescription irrespective of the length of time such use continues." *Strauss v. Thompson*, 175 Kan. 98, 101, 259 P.2d 145 (1953). But he contends that no permission was granted prior to his control of Parcel 1. Although title did not legally pass to Furches until the quitclaim deed from his mother in 2021, he testified he has occupied and maintained continuous control of the land since 1994, when his mother loaned him the money to buy it, although title was put in her name at the time. However, the trial court found the prescriptive easement was established going back to the early '70s—prior to Furches' claimed assumption of control in 1994.

The trial court's determination that a prescriptive easement ripened by 1970 is supported by substantial competent evidence. The evidence and testimony established the

8

open and exclusive use—through the owners of Parcel 9 (and the public's) use of the loop road to access their land. The evidence establishes that there was at least 15 years of continuous use of the loop road by Parcel 9's owners. And there was adverse use with the landowner's knowledge. Therefore, the trial court's finding that a prescriptive easement existed was not erroneous—the finding was supported by substantial competent evidence.

Furches next argues that even if any prescriptive easement existed, it was terminated through Morris' abandonment or through Furches' adverse possession of the easement.

*Furches may not raise this issue for the first time on appeal.*

Because Furches did not raise this issue before the trial court, he may not raise the issue for the first time on appeal unless an applicable exception is alleged. See *In re N.E.*, 316 Kan. 391, 407, 516 P.3d 586 (2022). There are three exceptions to the general rule that issues may not be asserted for the first time on appeal: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights; and (3) the district court was right for the wrong reason. 316 Kan. at 407-08. Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

In his brief, Furches gives no explanation for his failure to raise this issue before the trial court as required by Rule 6.02(a)(5). And no exception appears to merit review. First, the issue of whether Furches adversely possessed the disputed area to override any prescriptive easement does not involve a question of law arising on proven or admitted facts. Rather, the issue requires a fact-intensive analysis to determine whether Furches'

9

actions amounted to adverse possession of an easement. Second, Furches did not assert any argument on whether considering this issue is necessary to serve the ends of justice or to prevent a denial of fundamental rights. Therefore, this court cannot make an argument a litigant fails to make. Finally, this issue is not one where the trial court was right for the wrong reason. As the Dirkses point out, Furches argues that the trial court reached the wrong result.

Because no exception applies to warrant consideration of an issue which was not raised before the trial court, Furches may not assert this issue for the first time on appeal.

*The prescriptive easement did not terminate through abandonment or adverse possession.*

Furches contends that even if a prescriptive easement ripened in the 1970s, his exercise of control over the prescriptive area overrode the easement. Furches also argues that Ronda Morris' acceptance of Furches' ownership of the prescriptive easement area sufficed as an abandonment of the easement.

Adverse possession is the open, exclusive, continuous possession of another's property, under either a claim knowingly adverse or under a belief of ownership, for 15 years. K.S.A. 60-503. The adverse possession exclusive element differs from a prescriptive easement claim as it requires that the adverse possessor's use be exclusive of all others to give notice of the challenge to the landowner's title to the land. *Pyle*, 317 Kan. at 507. In the prescriptive easement scenario, however, the prescriptor's exclusive use refers to a challenge only to the true owner's right to prevent the prescriptor from using the land in the particular manner for which the easement is claimed.

The owner of an easement may abandon their rights by relinquishing possession with the intent to terminate the easement. 28A C.J.S., Easements § 147. Termination of

an easement by abandonment turns on the intent and actions of the owner of the easement. 28A C.J.S., Easements § 147.

The rights to an easement may also be terminated through adverse possession or use by a person other than the owner of the easement. This method differs from abandonment as it does not require the intent of the easement owner to relinquish their rights but focuses on the adverse use of another. 28A C.J.S., Easements § 153. For termination by adverse possession, the use or possession must be actual, adverse, hostile, open, notorious, clear, unequivocal, and continuous for the statutory or prescriptive period. 28A C.J.S., Easements § 155. The possession or use must also be under a claim of right or ownership or color of title and be exclusive. 28A C.J.S., Easements § 155. The owner of the easement must also have knowledge of the adverse use to put them on notice of the challenge to their rights. 28A C.J.S., Easements § 155.

*Furches failed to show the easement terminated through abandonment or adverse possession.*

The extent of Furches' adverse possession/abandonment argument is based on his exercise of control over and Morris' acceptance of his ownership over the easement which he claims extinguished any right to a prescriptive easement.

Furches failed to show abandonment of the prescriptive easement because he has not established the requisite intent by Morris or her predecessors in interest to relinquish their rights to the easement. The record yields no support for abandonment either. At trial, members of the community testified that Morris' actions were consistent with that of an owner. There is no evidence that Morris—or any predecessor or successor in interest—intended to relinquish or abandon their rights to the easement. On the contrary, the evidence shows the intent to retain the rights to the easement as the use of the loop

11

road was frequent and necessary for access to the house on Parcel 9. Thus, Furches failed to show Morris intended to abandon her rights to the easement.

Furches also failed to establish that the easement was terminated through Furches' adverse possession of the loop road. The only evidence that Furches cites is a temporary impairment of the loop road—where a company hired by Furches used heavy machinery to crush cars and created a mess, which Morris assisted in removing. For adverse possession to terminate an easement, there needs to be actual, adverse, and hostile use of the land; open and notorious; clear and unequivocal, continuous for the requisite time period; and exclusive. Furches' temporary impairment of the loop road certainly does not meet the level of adverse possession as Morris could continue her use of the easement as soon as the debris was cleaned up. Therefore, Furches failed to establish that the easement was terminated through his adverse possession of the prescriptive easement.

The evidence does not show that the prescriptive easement terminated through abandonment or through adverse possession.

*Is the court's description of the easement too wide?*

Furches argues that the trial court's ruling was erroneous as it unreasonably "grant[ed] a very wide easement." Furches requests that this court reduce the easement "to a reasonable width comparable to a standard driveway." While this argument was somewhat raised before the trial court, it was not based on whether the size and shape of the easement was reasonable. Assuming the issue was raised below or an exception applies, Furches fails to explain why this court should redraw or reduce in size the trial court's determination of the prescriptive easement area.

Furches argues the easement's width was unreasonable because it was not as narrow as reasonably possible. In support, Furches cites that the average width of "actual

county roads" are 30 feet wide and fire trucks and ambulances could still access the property by making a three-point turn to exit, or do a three-point turn in a 26 foot wide alley. In support, Furches cited *Spears v. Kansas City Power & Light Co.*, 203 Kan. 520, 529, 455 P.2d 496 (1969), to claim that "Kansas Courts have held that the use made of an easement must [be] reasonable."

But Furches ignores the distinction between reasonableness of use and reasonableness of size or shape. Even so, Furches cites no authority permitting this court to reshape or reduce the size of an easement granted by the trial court. It is not the function of this court to reweigh evidence, pass on the credibility of witnesses, or redetermine questions of fact—which would be necessary to determine what the reasonable size and shape of the easement is. *In re Adoption of C.L.*, 308 Kan. at 1279.

We must note that at this point this easement is a creature of custom and use. Its shape was not created by grant or deed. It has been formed from years of use. The district court is just memorializing its use in the form of a court order.

No authority exists requiring an easement to be as narrow as reasonably possible. Even if there were, the trial court was in the best position to consider the evidence and determine what was necessary and reasonable for the beneficial use and enjoyment of the Dirkses' property. Therefore, the prescriptive easement granted by the trial court was not erroneously or unreasonably wide.

*The cross appeal is dismissed.*

Because we have upheld the district court's ruling that a prescriptive easement exists on Parcel 1, we need not address the three alternative theories raised by the Dirkses in their cross-appeal.

The findings of fact by the district court are fair and reasonable, supported by substantial competent evidence. The court's legal conclusions are all sound, and there is no need to amend them.

Affirmed.